THIS VERSION ICLUDES THE ERRATAS DATED 15SEP00 AND 17OCT00-e

# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 99-347

Merle D. Stone , Appellant,

v.

Hershel W. Gober,
Acting Secretary of Veterans Affairs, Appellee.

On Appeal from the Board of Veterans' Appeals

(Decided Sep 11, 2000)

*James J. Wall,* of Wilmington, N.C., was on the pleadings for the appellant.

*Robert E. Coy*, Acting General Counsel; *Ron Garvin*, Assistant General Counsel; *Carolyn F. Washington*, Deputy Assistant General Counsel; and *Michael R. Smalls*, all of Washington, D.C., were on the pleadings for the appellee.

Before FARLEY, IVERS, and GREENE, *Judges*.

IVERS, *Judge*: The appellant, Merle D. Stone, widow of veteran Percy V. Stone, appeals a February 4, 1999, decision of the Board of Veterans' Appeals (BVA or Board) that denied service connection for the cause of the veteran's death. Record (R.) at 10. Both the Secretary and the veteran have filed briefs. This appeal is timely, and the Court has jurisdiction pursuant to 38 U.S.C. § 7252(a) and 7266(a). For the reasons set forth below, the Court will vacate the Board's February 4, 1999, decision and remand the matter.

## I.  FACTS

The veteran, Percy V. Stone, served on active duty in the U.S. Army from October 1943 to January 1946. R. at 14. The record reflects that the veteran served with the 62nd Signal Battalion

in the Hiroshima area from October 22, 1945, to December 27, 1945. R. at 3, 14, 97. The veteran was first diagnosed with carcinoma at a private hospital in September 1978. R. at 18-24. The veteran was hospitalized at the local VA medical center several times, including December 1978 to January 1979 (R. at 83-90) and in February, May, June, and July 1979 (R. at 61-70, 75-82, 85). There is no mention in any of the veteran's service medical records (SMRs) of exposure to radiation during service. R. at 61-70, 75-82, 83-90. The veteran's SMRs are available (R. at 46-59), but may be incomplete because a report from the National Personnel Records Center (NPRC) indicates that the fire at the NPRC building in St. Louis, Missouri in 1973 caused some of the veteran's records to be destroyed or lost. R. at 92. The veteran's available SMRs reflect that he did not have any diseases of the liver, colon, or rectum and no carcinoma on any part of his body during service. R. at 46-59. The veteran died on September 11, 1979, with the immediate cause of death listed as cardiorespiratory arrest. R. 101. Carcinoma of the rectum with metastasis to liver was listed under "other significant conditions contributing to death but not related to cause." *Id.* The veteran was not service connected for any disability at the time of his death.

In October 1986, the appellant filed a claim for service connection for the cause of the veteran's death. R. at 37-40. The claim was denied in an unappealed September 1987 rating decision. R. at 111-12. After the decision, the regional office (RO) notified the appellant that substantive changes had been made to the laws and regulations governing radiation claims. R. at 114-16. In June 1993, in response to the RO's notice, the appellant filed a new claim for service connection for the cause of the veteran's death. R. at 118, 120. The RO requested an estimate from the Defense Nuclear Agency (DNA) of the possible radiation dose that the veteran might have received from his service in the vicinity of Hiroshima. R. at 30. DNA determined that the veteran was exposed to a maximum of .03 rem gamma radiation and no neutron radiation, resulting in a total possible exposure of less than 1 rem. R. at 140.

In June 1996, VA Chief Public Health and Environmental Hazards Officer, Susan H. Mather, M.D., M.P.H., on behalf of the Under Secretary for Health, determined that "it is unlikely that the [veteran's] carcinoma of the rectum and anal area can be attributed to exposure to ionizing radiation in service." R. at 153. In July 1996, the Under Secretary for Benefits, after reviewing Dr. Mather's opinion, determined, "As a result of this opinion, and following review of the evidence in its entirety, it is our opinion that there is no reasonable possibility that the veteran's disability was the result of

such exposure." R. at 155. The RO, relying upon Dr. Mather's opinion, denied the claim in July 1996. R. at 157-59. The appellant appealed the denial. R. at 183-85. The appellant noted in her VA Form 9:

> While the theory of a threshold dose of ionizing radiation, below which there was no carcinogenic effect, was generally accepted in the past, the consensus today is that any level of radiation today is probably harmful, in the sense that exposed individuals run increased risks of developing malignant disease. . . . Furthermore after recent readjustment of the radiation doses received by atomic bomb survivors in Japan, a growing debate about permissible exposure levels has recently led to call [sic] many scientists for the standard setting agencies to lower the permissible levels.

R. at 185. (Citing *Gordy-Gray, Attorney's Textbook of Medicine.*)

In February 1998, the Board remanded the claim, with the instruction, among others, that the claim was to be returned to Dr. Mather so that she could consider the appellant's contention that recent scientific developments were pertinent to the question, and address whether there had been any intervening scientific developments that would alter her findings or conclusion. R. at 190. Dr. Mather, in a September 4, 1998 memorandum, responded, "We are not aware of any significant scientific developments regarding the relationship between ionizing radiation and the development of rectal or anal carcinomas since our previous opinion dated June 13, 1996." R. at 205. Dr. Mather's original opinion, that it was unlikely that the veteran's carcinoma could be attributed to exposure to ionizing radiation in service, remained unchanged. *Id.*

The RO, in compliance with remand instructions from the Board (R. at 188-91), requested that the appellant submit the autopsy report and the veteran's medical treatment records from his final hospitalization. R. at 193. The RO informed the appellant that because the requested documents were held by a private hospital, she would have to acquire the records and submit them. *Id.* The record does not indicate that the appellant has submitted the requested records.

The Board, in the decision here on appeal, denied service connection for the veteran's cause of death. R. at 3.

## II. ANALYSIS

### A. Adequate Reasons or Bases

Service connection may be granted for a veteran's cause of death if a disability causing death occurred during service or if a service-connected disability either caused death or contributed substantially and materially to the cause of death. 38 U.S.C. § 1310; 38 C.F.R. § 3.312 (1999). Service connection for cancer which is claimed to be attributable to ionizing radiation exposure during service can be established in three different ways. *Ramey* v. *Brown*, 11 Vet.App. 40, 44 (1996). First, under 38 U.S.C. § 1112(c) there are 15 types of cancer which can be presumptively service connected. Second, 38 C.F.R. § 3.311(b) (1999) provides a list of "radiogenic diseases" which will be service connected if certain conditions specified in the regulation have been met. Third, direct service connection can be established by "show[ing] that the disease or malady was incurred during or aggravated by service," a task that "includes the difficult burden of tracing causation to a condition or event during service." *Combee v. Brown*, 34 F.3d 1039, 1043 (Fed. Cir. 1994).

The Board denied direct service connection for the veteran's cause of death, cancer of the rectum. R. at 6-7, 10. Rectal cancer is not one of the 15 diseases subject to presumptive service connection under 38 U.S.C. § 1112(c) and its implementing regulation 38 C.F.R. § 3.309(d). Rectal cancer, is however, a "radiogenic disease" listed in 38 C.F.R. § 3.311(b)(2). Section 3.311(b)(1) concerning initial review of claims provides:

(b)(1) When it is determined:

> (i) A veteran was exposed to ionizing radiation as a result of participation in the atmospheric testing of nuclear weapons, the occupation of Hiroshima or Nagasaki, Japan, from September 1945 until July 1946, or other activities as claimed;
> (ii) The veteran subsequently develops a radiogenic disease; and
> (iii) Such disease first became manifest within the period specified in paragraph (b)(5) of this section; before its adjudication the claim will be referred to the Under Secretary for Benefits for further consideration in accordance with paragraph (c) of this section. If any of the foregoing 3 requirements has not been met, it shall not be determined that a disease has resulted from exposure to ionizing radiation under such circumstances.

The veteran satisfies all of the requirements of section 3.311(b)(1): the veteran served as part of the occupation force at Hiroshima during the requisite time period; and he developed a radiogenic disease, cancer of the rectum, that manifested itself more than 5 years after exposure pursuant to section 3.311(b)(5)(iv). Section 3.311(c) of title 38, Code of Federal Regulations provides:

(1) When a claim is forwarded for review pursuant to paragraph (b)(1) of this section . . . the Under Secretary for Benefits shall consider the claim with reference to the factors specified in paragraph (e) of this section and may request an advisory medical opinion from the Under Secretary of Health.

> (i) If after such consideration the Under Secretary for Benefits is convinced sound scientific and medical evidence supports the conclusion it is at least as likely as not the veteran's disease resulted from exposure to radiation in service, the Under Secretary for benefits shall so inform the regional office in writing . . .
> (ii) If the Under Secretary for Benefits determines that there is no reasonable possibility that the veteran's disease resulted from radiation exposure in service, the Under Secretary for Benefits shall so inform the regional office in writing, setting forth the rationale for this conclusion.

(2) If the Under Secretary for Benefits, after considering any opinion of the Under Secretary for Health, is unable to conclude whether it is at least as likely or not, or that there is no reasonable possibility, the veteran's disease resulted from radiation exposure in service, the Under Secretary for Benefits shall refer the matter to an outside consultant in accordance with paragraph (d) of this section.

The Board in its decision stated:

> When presented with the facts of this claim, a medical doctor and representatives of the VA Under Secretaries for Benefits and Health determined that based on the veteran's low level of exposure to ionizing radiation while in service it is "unlikely" that his carcinoma of the rectum was the result of such exposure. When presented with the appellant's cited scientific evidence, the VA medical doctor again found it "unlikely" the veteran's exposure to ionizing radiation during service resulted in his carcinoma. Therefore, service connection for the veteran's carcinoma of the rectum is not warranted on a presumptive basis as a "radiogenic" disease under 38 C.F.R. § 3.311(b)(2).

R. at 9.

Section 19.9(a) of title 38, Code of Federal Regulations provides, "If further evidence or clarification of the evidence or correction of a procedural defect is essential for a proper appellate decision, [the Board] shall remand the case to the agency of original jurisdiction, specifying the action to be undertaken . . . ." *See also Douglas v. Derwinski*, 2 Vet.App. 435, 443-44 (1992). On behalf of the Under Secretary for Health, Dr. Mather opined that it was unlikely that the veteran's cancer was caused by his in-service exposure. R. at 153. The Under Secretary for Benefits stated, "We have received a medical opinion from the Under Secretary [for Health], with which we agree,

that advises it is unlikely that the veteran's carcinoma of the rectum and anal area resulted from his exposure to ionizing radiation in service." R. at 155.

This Court has held that the Under Secretary for Benefits is not explicitly required to refer to the factors listed in section 3.311(e), but should, rather, consult those factors as a point of reference when making recommendations to the VARO. *Hilkert v. West*, 12 Vet.App. 145, 149-50 (1999). In this case, while the Under Secretary for Benefits was not required to explicitly consider each of the factors in section 3.311(e), the cursory explanation provided by the Under Secretary for Benefits did not provide adequate rationale for the conclusion that there was no reasonable possibility that the veteran's cancer was caused by his in-service exposure as required by 38 C.F.R. § 3.311(c)(ii). R. at 155. The Board erred in relying upon that opinion and in failing to remand the claim to the Under Secretary for Benefits to request an adequate rationale for its decision.

Pursuant to 38 U.S.C. § 7104(d)(1), a final decision of the Board must include "a written statement of the Board's findings and conclusions, and the reasons or bases for those findings and conclusions, on all material issues of fact and law presented on the record. . . ." This Court has held "that the BVA [must] articulate with reasonable clarity its 'reasons or bases' for decisions, and in order to facilitate effective judicial review, the Board must identify those findings it deems crucial to its decision and account for the evidence which it finds to be persuasive or unpersuasive." *Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990). Where the Board fails to fulfill this duty, the Court is precluded from effectively reviewing the adjudication. *Meeks v. Brown*, 5 Vet.App. 284, 288 (1993); *Browder v. Brown*, 5 Vet.App. 268, 272 (1993).

The Board did not adequately discuss its reasoning for considering it unnecessary to return the case to the Under Secretary of Benefits for a more complete rationale. There is no articulation of the Board's reasons for finding the Under Secretary of Benefits' opinion convincing, but rather a mere restatement of Dr. Mather's opinion in conjunction with the denial of presumptive service connection. Without such an explanation, the Court holds that the BVA did not provide adequate reasons or bases for denying the veteran's claim, based on all the evidence presented.

### B. Duty to Assist

The Board further noted in its decision that:

The appellant has also cited to scientific studies which suggest a connection between even extremely low levels of radiation and subsequent carcinomas in humans, but as a trier of fact, the Board does not find these sufficient to raise a reasonable doubt in favor of the appellant. The cited scientific information only indicates such a link is

possible as a general matter. Such literature does not provide sufficient guidance in resolving the specific question presented in this case: What is the likelihood that the cancer this veteran incurred in the 1970s is the result of his exposure to radiation in the period from October to December 1945 in the Hiroshima area? In contrast, the VA medical expert's opinion is specific to this claim and is made after a review of the estimate dosage level and other relevant facts.

R. at 9.

The U.S. Court of Appeals for the Federal Circuit held in *Epps* that "under [38 U.S.C.] § 5107(a), [VA] has a duty to assist *only* those claimants who have established 'well[-]grounded' (i.e., plausible) claims." *Epps v. Gober*, 126 F.3d 1464, 1469 (Fed. Cir. 1997), *cert. denied*, 524 U.S. 940 (1998) (emphasis added). The Federal Circuit has recently held:

that once a veteran has properly made out a well-grounded claim for a current disability as a result of a specific in-service occurrence or aggravation of a disease or injury, the agency's duty to assist . . . attaches to the investigation of *all* possible in-service causes of that current disability, including those unknown to the veteran.

*Schroeder v. West*, 212 F.3d 1265, 1271 (Fed. Cir. 2000) (emphasis in original). The Board found that the appellant's claim for service connection for the cause of the veteran's death was well grounded. R. at 6. Therefore, under *Schroeder*, the Secretary was obligated to assist the appellant in developing her claim.

In the September 4, 1996 statement by Dr. Mather, on behalf of the Under Secretary of Health, she said that she was "not aware of any significant scientific developments regarding the relationship between ionizing radiation and the development of rectal or anal carcinomas since our previous opinion dated June 13, 1996." R. at 205. That mere cursory dismissal of the possibility of the existence of evidence beneficial to the appellant's claim did not satisfy the Secretary's duty to assist. The Secretary had a duty to inform the appellant that she needed to submit the studies she relied upon in support of her claim, to attempt to obtain the studies for Dr. Mather's consideration in making her determination, or, at a minimum, provide specific citations to the materials so that VA could access them in compliance with the Board's remand instructions. In failing to do so, VA violated its duty to assist. The Secretary also violated his duty to comply with the Board's remand instruction that Dr. Mather consider whether any recent intervening scientific developments would alter her findings or conclusions in violation of *Stegall v. West,* 11 Vet.App. 268, 271 (1998) (holding "that a remand by this Court or the Board confers on the veteran or other claimant, as a matter of law, the right to compliance with the remand orders"). Since the Board found the

appellant's claim to be well grounded, *Schroeder* requires that the claim be remanded for the Secretary to satisfy the duty to assist as to all theories of the claim.

The Court has considered the additional arguments raised in the appellant's brief and finds them to be without merit.

### III.  CONCLUSION

After consideration of the appellant's brief, the Secretary's brief, and a review of the record, the Court holds that the veteran has demonstrated that the Board committed legal error which would warrant  remand.  The Court is also not satisfied that the Board's decision fulfills the "reasons or bases" requirement of 38 U.S.C. § 7104(d)(1).  Therefore, the Board's February 4, 1999, decision is VACATED and the matter is REMANDED for adjudication consistent with this opinion.