# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-0757

JAMES L. PARRISH, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued January 27, 2011                                          Decided April 22, 2011)

*Glenn R. Bergmann*, with whom *Daniel D. Wedemeyer* was on the brief, both of Bethesda, Maryland, for the appellant.

*Lavinia A. Derr*, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Richard Mayerick*, Deputy Assistant General Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before KASOLD, *Chief Judge*, and MOORMAN and DAVIS, *Judges*.

KASOLD, *Chief Judge*, filed the opinion of the Court. DAVIS, *Judge*, filed an opinion concurring in the result.

KASOLD, *Chief Judge*: Veteran James L. Parrish appeals through counsel that part of a February 9, 2009, decision of the Board of Veterans' Appeals (Board) that denied disability compensation for chronic obstructive pulmonary disease (COPD) and pulmonary fibrosis,[1] both claimed to be a result of in-service radiation exposure, because the disabilities are not service connected. Mr. Parrish's initial argument to the Court focused on the adequacy of the Board's statement of reasons or bases for its decision with regard to its reliance on the procedure employed and decisions obtained by the Secretary in accordance with 38 C.F.R. § 3.311(c), a regulation

---

[1] "COPD" is any disorder characterized by persistent or recurring obstruction of bronchial air flow, such as chronic bronchitis, asthma, or pulmonary emphysema. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 538 (31st ed. 2007) [hereinafter DORLAND'S]. "Pulmonary fibrosis" is the formation of fibrous tissue in the lungs. *Id.* at 712 and 1575.

pertaining to the Secretary's radiation exposure claim adjudication process. On November 16, 2010, the Court affirmed the Board's decision.

Mr. Parrish timely sought reconsideration, specifically contending that 38 C.F.R. § 3.100 does not permit the Under Secretary for Benefits (USB) to delegate obligations that expressly are placed upon him by § 3.311(c). Although this specific argument was not raised in his initial brief, it is sufficiently related to his initial argument to grant reconsideration, and the November 16 decision was withdrawn. Because this specific issue has not previously been decided by the Court, it was referred for decision by a panel of the Court. *Frankel v. Derwinski*, 1 Vet.App. 23, 25-26 (1990).

For the reasons set forth below, the Court holds that (1) the express designation of responsibility to the USB stated in § 3.311(c) does not limit the USB's authority under § 3.100 to designate the Compensation and Pension (C&P) Service Director (C&P Cirector) to render the opinion required by § 3.311(c), and (2) Mr. Parrish otherwise fails to demonstrate error in the Board's decision. Therefore, the Board's decision will be affirmed.

## I. FACTS

Mr. Parrish served on active duty from January 1957 to December 1959. In August 1999, he submitted a disability compensation claim for, inter alia, COPD and pulmonary fibrosis from exposure to in-service radiation. With his claim, Mr. Parrish submitted an August 1999 letter from his private physician who opined that his conditions "certainly could have been caused by his exposure to radiation." Record (R.) at 504. Responding to a request from the St. Petersburg, Florida, regional office (RO), the Defense Threat Reduction Agency (DTRA) confirmed that Mr. Parrish was present at Operation PLUMBBOB, a U.S. atmospheric nuclear test series conducted in Nevada in 1957, but that he had not been exposed to measurable radiation. The RO denied the claim in a November 2001 rating decision.

In July 2002, Mr. Parrish submitted a Notice of Disagreement and an article discussing possible health problems of veterans who participated in nuclear weapons testing. The RO continued its denial of the claim in a January 2004 Statement of the Case. With his appeal to the Board, Mr. Parrish submitted another letter from his private physician dated February 23, 2004. The matter was forwarded to the RO for more development and an additional dose estimate from DTRA was

2

obtained. According to a November 2007 letter from DTRA, DTRA began a new policy to provide worst-case radiation dose estimates to give the maximum benefit of the doubt to veterans and to ensure that reported doses are not less than actual doses. Although Mr. Parrish originally was found to have nonmeasurable exposure to radiation, under the new policy, DTRA estimated that Mr. Parrish could not have been exposed to more than 16 rem external gamma dose, 1 rem external neutron dose, 1 rem internal committed dose to his lung (alpha), and 3 rem internal committed dose to his lung (beta + gamma).

In December 2007, the RO requested from the C&P Service a decision regarding the issue of service connection for COPD and pulmonary fibrosis secondary to ionizing radiation exposure. The request included "information as required by the manual," to wit: (a) Pertinent service information; (b) the circumstances, including the dates of exposure; (c) description of disease claimed; (d) age at time of exposure, (e) dosage estimate; (f) time lapse between exposure and onset of disease; (g) gender, pertinent family history and employment history; (h) history of exposure to known carcinogens or radiation, including smoking; and (i) other relevant information. R. at 230-31. The C&P Director subsequently forwarded this information to the Under Secretary for Health. The subject line of the memorandum reads: "Radiation Review - 38 C.F.R. § 3.311." R. at 222.

In July 2008, the chief public health and environmental hazards officer (CPHEHO) responded to the C&P Director's request.[2] In sum, the CPHEHO noted that Mr. Parrish's dose estimates of 16, 1, 1 and 3 rem were the worst-case assumptions, and that although the Interactive Radioepidemiological Program is used to estimate the likelihood that radiation exposure is related to malignant neoplastic disease,[3] the program did not cover non-neoplastic disease such as COPD and pulmonary fibrosis. The CPHEHO noted the following research findings: (1) There were no peer-reviewed studies documenting a statistically significant association between pulmonary fibrosis or COPD and a dose response to radiation exposure; (2) some research showed a significant dose-

---

[2]The parties do not take issue with the apparent delegation of authority in this instance. Because the matter was not addressed by the Board or argued by the parties, the Court will not further address it. *See Carbino v. West*, 168 F.3d 32, 35 (Fed. Cir. 1999) (noting that the Court properly declined to consider contentions that were not raised by the appellant).

[3]"Neoplastic" means pertaining to "neoplasm," which is any new and abnormal growth; specifically a new growth of tissue that is uncontrolled and progressive. *See* DORLAND'S at 1258.

response relationship for respiratory disease and other non-neoplastic diseases, but smoking also affects noncancer mortality; (3) additional research confirmed these findings but noted that it was not possible to rule out a model with a threshold as high as 50 rem for other non-neoplastic diseases;[4] (4) lifetime noncancer risks for people exposed as adults to 100 rem were similar to those for solid cancer, and for people exposed as children, the risks were about half as great. Noting that Mr. Parrish was a former smoker, the CPHEHO concluded in light of the stated research that it was unlikely that Mr. Parrish's COPD and pulmonary fibrosis can be attributed to in-service ionizing radiation exposure. R. at 219.

Subsequently, the C&P Director conducted radiation review[5] and noted, inter alia, the CPHEHO's medical opinion, the worst-case dosage estimates from DTRA, that Mr. Parrish's conditions were diagnosed 40 years after exposure to ionizing radiation, and that Mr. Parrish reported having been a smoker for 29 years. The C&P Director opined that there was no reasonable possibility that Mr. Parrish's COPD and pulmonary fibrosis are the result of his exposure to ionizing radiation in service. Thereafter, the RO issued a Supplemental Statement of the Case continuing the denial of the claim. On appeal, the Board explained that the matter hinged on knowledge of the amount of radiation exposure endured by Mr. Parrish. The Board denied disability compensation because, inter alia, the CPHEHO's and C&P Director's opinions were based on complete historical data with regard to Mr. Parrish's radiation exposure while Mr. Parrish's private physician's opinion was not. Mr. Parrish timely appealed.

---

[4]The CPHEHO opinion discusses dose estimates in terms of the "sievert" (sv), which is the unit of radiation absorbed dose equivalent, defined as that producing the same biologic effect in a specified tissue as 1 gray of high-energy x-rays; 1 sievert equals 100 rem. See DORLAND'S at 1733.

[5]Although the C&P Director's opinion is dated June 23, 2008, we presume that the date is an error because the text of the C&P Director's opinion expressly refers to the "July 10, 2008, memorandum from the [CPHEHO], writing for the under Secretary." R. at 220. Neither Mr. Parrish nor the Secretary raised, nor does the Court discern, any prejudicial error here.

## II. ANALYSIS

### A. The Parties' Arguments

#### 1. Primary Issue

Mr. Parrish argues that 38 C.F.R. § 3.311(c) designates the USB as the sole authority to make the radiation determination required by § 3.311, and that 38 C.F.R. § 3.100 does not permit him to delegate the authority to make this determination. Mr. Parrish further argues that, assuming delegation is permitted, no such delegation has been made.

The Secretary argues that the USB complied with § 3.311(c) because he reviewed the matter through his agent, the C&P Director, who reports directly to the USB, and that the USB has the authority to designate supervisory personnel such as the C&P Director to make findings under applicable law and regulation in accordance with 38 C.F.R. §§ 2.6(b) and 3.100. The Secretary further contends that the issue of delegation was settled in *Hilkert v. West*, 12 Vet.App. 145 (1999) (en banc). At oral argument, the Secretary asserted that the USB properly designated the C&P Director to make decisions on his behalf in accordance with the Veterans Benefits Administration *Adjudication Procedures Manual* (M21-1MR). *See* M21-MR, pt. IV, subpt. ii, ch. 1, sec. C.

This issue is discussed in subsection B, below.

#### 2. Additional Issues

Mr. Parrish also argues that the Board provided an inadequate statement of reasons or bases for its decision with regard to three additional issues. First, he argues that the C&P Director inadequately explained his decision such that the Board erred when it did not seek another decision in contravention of *Stone v. Gober*, 14 Vet.App. 116 (2000). Second, he argues that the Board inadequately explained how the C&P Director's decision and the CPHEHO's opinion are more probative than his private physician's opinion. Finally, he argues that the Board's statement is inadequate because there is no evidence of record that the C&P Director has medical expertise or training.

The Secretary contends that the Board's decision is explained adequately and is not clearly erroneous. He reasons that the Board explained that the CPHEHO and the C&P Director provided detailed reports based upon correct regulatory criteria, and the Board did not rely on the C&P Director's decision as medical evidence.

These issues are discussed in subsection C, below.

## B. Decision Process Under 38 C.F.R. § 3.311

Veterans are awarded disability compensation for disabilities resulting from injuries or diseases that are incurred in or aggravated by service. 38 U.S.C. §§ 1110 and 1310. For disability compensation claims based upon in-service radiation exposure, the Secretary has established a special adjudication process. *See* 38 C.F.R. § 3.311 (2010); *see also Stone*, 14 Vet.App. at 119; *Hilkert*, *supra*.

Succinctly stated, radiation exposure claims must be referred to the USB for consideration when a claimant, at a minimum, was exposed to ionizing radiation as a result of participation in the atmospheric testing of nuclear weapons, 38 C.F.R. § 3.311(b)(1)(i), subsequently developed a radiogenic disease, 38 C.F.R. § 3.311(b)(1)(ii), and, the radiogenic disease became manifest within the period specified in 38 C.F.R. § 3.311(b)(5). If a condition is not recognized by regulation as a "radiogenic disease," the claim nevertheless must be referred to the USB when a claimant "has cited or submitted competent scientific or medical evidence that the claimed condition is a radiogenic disease." 38 C.F.R. § 3.311(b)(4). Mr. Parrish's claim was forwarded to the USB pursuant to subsection (b)(4).

Once forwarded, § 3.311(c) dictates the process. Pursuant thereto, the USB is required to evaluate the claim with reference to specific criteria laid out in § 3.311(e). As noted in *Hilkert*, 12 Vet.App. at 149, because the USB's consideration of the claim "relies heavily on medical and scientific findings and analysis, the [USB] may request an advisory opinion from the Under Secretary for Health." The USB then forwards his decision, with supporting rationale, to the RO for adjudication of the claim. 38 C.F.R. § 3.311(c) and (d). The C&P Director is not mentioned in the regulation as having a role in this process, which forms the basis of Mr. Parrish's primary argument.

### 1. Hilkert is not Controlling

Contrary to the Secretary's contention, *Hilkert*, *supra*, is not binding or settled authority on whether the USB may delegate, or has delegated, authority to the C&P Director to render the review and determination called for in § 3.311(c). Although *Hilkert* includes a statement that the RO "properly referred the claim to the Director of Compensation and Pension for review who acted on behalf of the USB," 12 Vet.App. at 149, the authority to delegate was not an issue in the case.

Indeed, the issue was not argued or developed, and its resolution was not necessary to the outcome of the case. *See id*. at 158 n.15 (Steinberg, J., dissenting) (noting that the appellant expressly declined to challenge the issue of delegation of authority to the C&P Director and that the issue was not addressed by the Court's decision). The passing mention of a proper referral, therefore, is dicta that does not settle the issue. *Jama v. Immigration and Customs Enforcement*, 543 U.S. 335, 352 n.12 (2005) ("Dictum settles nothing, even in the court that utters it."); BLACK'S LAW DICTIONARY 1101 (7th ed. 1999) (defining "obiter dictum" as "[a] judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential).

### 2. Authority to Designate

Congress has vested the Secretary with broad authority to delegate and to authorize successive redelegation with regard to all laws administered by the VA. Section 512 of title 38 provides in pertinent part:

> (a) Except as otherwise provided by law, the Secretary may assign functions and duties, and delegate, *or authorize successive redelegation of*, *authority to act and to render decisions*, with respect to *all laws* administered by the Department, to such officers and employees as the Secretary may find necessary.

*See* 38 U.S.C. § 512(a) (emphasis added).

By regulation, the Secretary has vested the USB with "authority to act on all matters assigned to the Veterans Benefits Administration except as provided in § 1.771[6] . . . and to authorize supervisory or adjudicative personnel within his/her jurisdiction to perform such functions as may be assigned." 38 C.F.R. § 2.6(b)(1) (2010). The authority to act on those matters within the realm of the USB's authority is further delegated to supervisory or adjudicative personnel designated by the USB, to wit:

> (a) Authority is *delegated* to the Under Secretary for Benefits *and* to supervisory or adjudicative personnel within the jurisdiction of the Veterans Benefits Administration *designated by the Under Secretary*, to make findings and decisions under the applicable laws, regulations, precedents, and instructions, as to entitlement of claimants to benefits under *all laws* administered by the Department of Veterans

---

[6] There currently is no provision of VA regulation at §1.771.

Affairs governing the payment of monetary benefits to veterans and their dependents, within the jurisdiction of the Compensation and Pension Service.

*See* 38 C.F.R. § 3.100(a) (2010) (emphasis added).

Mr. Parrish does not dispute that the Secretary has broad statutory authority to delegate and redelegate authority to act with respect to all laws administered by VA, and that he has delegated authority to the USB to designate others under his control to make findings and render decisions with regard to entitlement to VA benefits. Rather, Mr. Parrish argues that (1) the Secretary has restricted the authority to make the radiation determination required by § 3.311 solely to the USB, and (2) the regulatory history for § 3.311(c) impliedly prohibits delegation. In support of his first argument, Mr. Parrish notes that § 3.311(c) cites only the USB as the officer to make the radiation determination required by § 3.311, which he argues reflects the Secretary's decision that authority to make the radiation determination may not be further delegated. In further support of this argument, Mr. Parrish notes that 38 C.F.R. § 3.321(b), a provision addressing extraschedular rating determinations, vests decisionmaking in either the USB or the C&P Director, reflecting that the Secretary knows how to vest authority to act in more than one official when he so chooses.

Mr. Parrish's observations in support of his first argument ignore at least two facts that demonstrate the Secretary did not restrict the broad authority of the USB granted in § 3.100(a) to designate the C&P Director (or other supervisory or adjudicative personnel within the jurisdiction of the Veterans Benefits Administration) to make the radiation determination required in § 3.311(c). First, there has been a longstanding practice of the C&P Director making decisions under 38 C.F.R. § 3.311(c), as reflected in our caselaw over at least the past 19 years. *See Davis v. Brown*, 10 Vet.App. 209, 210 (1997) (noting that in April 1992, the RO referred the claim to the C&P Director); *see also Hilkert*, 12 Vet.App. at 149 (noting that the RO forwarded the matter to the C&P Director for review, who acted on behalf of the USB). The Secretary's awareness that the C&P Director has been making the radiation determination, as demonstrated by cases the Secretary has litigated before the Court, and his inaction, demonstrate's the Secretary's approval of the process, including the delegation of authority. *Cf. Bob Jones Univ. v. United States*, 461 U.S. 574, 600-01 (1983) (noting that Congress's awareness of an administrative agency's regulatory interpretation for 12 years and Congress's failure to act on bills proposed on the subject the regulations interpreted provides support

8

that Congress acquiesced, and therefore agreed, with the agency's regulatory interpretation). Further, although *Hilkert* is not controlling in this case as discussed above, the Court notes that *Hilkert* is cited as authority for the promulgation of § 3.311. Thus, the procedures employed for a radiation claim under § 3.311 in *Hilkert* are informative of VA's common practice in adjudicating these claims.

Second, Veterans Benefits Administration's M21-MR establishes the procedure for adjudicating claims under 38 C.F.R. § 3.311. The manual states that the RO should forward claims to the C&P Service when the three requirements of 38 C.F.R. § 3.311(b)(1) are met. It also states that the C&P Service is responsible for providing the RO with an opinion recommending either that the claim be granted or denied. *See* M21-MR, pt. IV, subpt. ii, ch. 1, sec. C, 23-24; *see also Brannon v. Derwinski*, 1 Vet.App. 314, 316 (1991) ("'[C]ourts may take judicial notice of facts of universal notoriety, which need not be proved, and of whatever is generally known within their jurisdictions.'"(quoting *B.V.D. Licensing Corp. V. Body Action Deisgn, Inc.*, 846 F.2d, 727, 728 (Fed. Cir. 1988))). As head of the C&P Service, the C&P Director is an appropriate official to provide such an opinion. And, as noted above, the Secretary's inaction with regard to directing any change to the M21-MR reflects his acceptance of the procedures contained therein. *Cf. Bob Jones Univ.*, *supra*.

Contrary to Mr. Parrish's second argument, the regulatory history for § 3.311(c) does not impliedly prohibit delegation. Mr. Parrish correctly notes that the first proposed version of § 3.311(c) vested decisionmaking in the then-titled chief medical director, but in response to comments that referral to the chief medical director appeared to transfer rating jurisdiction from the then-named Department of Veterans Benefits to the Department of Medicine and Surgery, the provision was amended to clarify that the final decision rested with the then-titled chief benefits director and that he could request an advisory opinion from the chief medical director. *See* 50 Fed. Reg. 34,452, 34,456 (Aug. 26, 1985).[7] Although this is an accurate statement of the history of § 3.311(c), it fails

---

[7] "Chief benefits director" and "chief medical director" are former titles for the "under secretary for benefits" and "under secretary for health," respectively. The titles were changed to their current form only to match the correct statutory titles. *See* 60 Fed. Reg. 9627 (Feb. 21, 1995). Moreover, the "Department of Veterans Benefits" and the "Department of Medicine and Surgery" are former titles for the "Veterans Benefits Administration" and "Veterans Health Administration," respectively.

9

to show any intent on the part of the Secretary to prohibit designation of responsibility to officers who are within the Department of Veterans Benefits today, such as the C&P Director. Rather, the history indicates only that the Secretary intended to clarify that jurisdiction to decide veterans-benefits matters remained with the appropriate administration.

### 3. Designation of C&P Director

Mr. Parrish contends that even if the USB had the authority to delegate authority to the C&P Director to make the radiation determination required by § 3.311(c), the USB never did so. At oral argument, Mr. Parrish noted that VA directives entitled "Delegations of Authority" establish VA policy that authority may be delegated only through written delegation memoranda, if not otherwise delegated by statute or VA regulation. *See*, *e.g.*, VA Directive 0000 (2009), *available at* http://www.va.gov/vapubs/search_ action.cfm?dType=1. He further noted that there is no evidence in the record on appeal that a corresponding delegation memorandum has been executed that delegates authority to the C&P Director. Mr. Parrish therefore argued that the C&P Director's radiation determination was ultra vires.

Initially we note that Mr. Parrish cites to nothing in the record indicating he raised this issue below, or that it reasonably was raised by the record; thus it was not error for the Board to not develop or address this issue. *See Pond v. West*, 112 Vet.App. 341 (1999) (Board is required to develop all issues reasonably raised below); *Talbert v. Brown*, 7 Vet.App. 352, 356 (1995) (noting that the Board must address reasonably raised issues and is not obligated to "conduct an exercise in prognostication"). Accordingly, it also is not surprising that a delegation memorandum is not in the record on appeal as it was not an issue below, and the simple fact that such a memorandum is not in the record fails to overcome the presumption that government officials generally discharge their duties in accordance with the law and governing regulations. *Rizzo v. Shinseki*, 580 F.3d 1288, 1292 (2009) ("'[T]he doctrine . . . allows courts to presume that what appears regular is regular, the burden shifting to the attacker to show the contrary,'" and stating that "nothing in this Court's precedent limits the presumption to procedural matters") (quoting *Butler v. Principi*, 244 F.3d 1337, 1340 (2001))); *Borg-Warner Corp. v. Comm'r*, 660 F.2d 324, 330 (7th Cir. 1981) (Under the presumption of regularity and in the absence of any indication to the contrary, it is presumed that authority has been delegated properly. (citing *United States v. Ahrens*, 530 F.2d 781, 786 (8th Cir. 1976) and

*Lesser v. U.S.*, 368 F.2d 306, 309 (2d Cir. 1966))); *United States v. Masusock*, 1 U.S.C.M.A. 32, 36-37 (1951) (same); *see also Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990) ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation.").

Moreover, Mr. Parrish essentially ignores the broad authority to act on matters within the jurisdiction of the Veterans Benefits Administration that has been delegated in regulation by the Secretary to the USB and any persons designated by the USB. *See* 38 C.F.R. § 3.100(a). In this context, the specific requirements of VA Directive 0000 (2009) are inapposite, as it addresses delegation, as opposed to designation. Although the M21-MR does not specifically designate the C&P Director to render the radiation determination, it clearly places responsibility for the radiation determination with the C&P Service, which implicitly designates the C&P Director to exercise the authority delegated in § 3.100(a). In sum, we find a proper delegation of authority in § 3.100(a), and, in the M21-MR, a proper designation of the C&P Director to exercise that delegation of authority. Accordingly, Mr. Parrish's contention that the C&P Director's decision is ultra vires is without merit.

## C. Remaining Issues on Appeal

The record does not support Mr. Parrish's other argument that the Board provided an inadequate statement of reasons or bases. In support of his argument, Mr. Parrish asserts that the Board (1) relied on an inadequately explained decision of the C&P Director under 38 C.F.R. § 3.311(c)(1), contravening *Stone*, *supra*, and (2) inadequately explained how the C&P Director's decision and the CPHEHO's opinion are more probative than his private physician's opinion because (a) both opinions are, themselves, explained inadequately and (b) there is no evidence of record that the C&P Director has medical expertise or training.

### 1. The Board's Duty To Provide Adequate Rationale and the Court's Standard of Review

Decisions of the Board shall be based on all applicable provisions of law and regulation, and the Board shall provide a written statement of reasons or bases for its conclusions. *See* 38 U.S.C. § 7104(a), (d)(1). The Board is not required to discuss all of the evidence of record, *see Dela Cruz v. Principi*, 15 Vet.App. 143, 149 (2001), but it should not reject evidence favorable to the claimant without discussing that evidence, *see Meyer v. Brown*, 9 Vet.App. 425, 433 (1996), and its overall

11

statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court." *Allday v. Brown*, 7 Vet.App. 517, 527 (1995). Moreover, the Board may find an unfavorable medical opinion more probative than a favorable one as long as it articulates understandable and valid reasons for doing so. *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 300 (2008); *see also Stefl v. Nicholson*, 21 Vet.App. 120, 124 (2007).

The Board's findings regarding the probative value of medical opinions, as well as its ultimate finding whether a disability is service connected, is subject to the "clearly erroneous" standard of review. *See Owens v. Brown*, 7 Vet.App. 429, 433 (1995) (Board's assignment of greater probative weight to one medical opinion than to another is subject to the "clearly erroneous" standard of review); *see also Russo v. Brown*, 9 Vet.App. 46, 50 (1996) (noting that a finding of service connection, or lack thereof, is a finding of fact reviewed under the "clearly erroneous" standard of review). A finding is clearly erroneous when "'although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *see also Padgett v. Nicholson*, 19 Vet.App. 133, 147-48 (2005).

*2. Substantive Requirements for Decisions Under 38 C.F.R. § 3.311*

Section 3.311(c)(1) also requires a certain degree of detail in decisions made thereunder. It provides in pertinent part:

> (1) [T]he Under Secretary for Benefits shall consider the claim with reference to the factors specified in paragraph (e) of this section and may request an advisory medical opinion from the Under Secretary for Health.
>
> (i) If after such consideration the Under Secretary for Benefits is convinced sound scientific and medical evidence supports the conclusion it is at least as likely as not the veteran's disease resulted from exposure to radiation in service, the Under Secretary for Benefits shall so inform the regional office of jurisdiction in writing. The Under Secretary for Benefits shall set forth the rationale for this conclusion, including an evaluation of the claim under the applicable factors specified in paragraph (e) of this section.
>
> (ii) If the Under Secretary for Benefits determines there is no reasonable possibility that the veteran's disease resulted from radiation exposure in service, the Under Secretary for Benefits shall so inform the regional office of jurisdiction in writing, setting forth the rationale for this conclusion.

*See* 38 C.F.R. § 3.311(c)(1). Applicable factors under subsection (e) are the following:

(1) The probable dose, in terms of dose type, rate and duration as a factor in inducing the disease, taking into account any known limitations in the dosimetry devices employed in its measurement or the methodologies employed in its estimation;
(2) The relative sensitivity of the involved tissue to induction, by ionizing radiation, of the specific pathology;
(3) The veteran's gender and pertinent family history;
(4) The veteran's age at time of exposure;
(5) The time-lapse between exposure and onset of the disease; and
(6) The extent to which exposure to radiation, or other carcinogens, outside of service may have contributed to development of the disease.

38 C.F.R. § 3.311(e). If the USB ultimately recommends that there "is no reasonable possibility that the veteran's disease resulted from radiation exposure in service,"*see* 38 C.F.R. § 3.311(c)(1)(ii), the USB is not required to discuss in his decision each of the subsection (e) factors. *Hilkert*, 12 Vet.App. at 149. Rather, the factors should be considered and consulted as a point of reference. *Id.* at 149-50.

> 3. *The Board's Decision is Adequately Explained and is Not Clearly Erroneous*

Mr. Parrish relies on *Stone*, *supra*, for the proposition that the C&P Director's decision here lacked sufficient explanation as to why there is no reasonable possibility that Mr. Parrish's conditions resulted from radiation exposure in service. In *Stone*, the radiation decision provided by the USB was cursory and lacked discussion of any of the § 3.311(e) factors. Specifically, the USB stated: "We have received a medical opinion from the Under Secretary [for Health], with which we agree, that advises it is unlikely that the veteran's carcinoma of the rectum and anal area resulted from his exposure to ionizing radiation in service." *Stone*, 14 Vet.App. at 120. The Court further noted that "[t]here is no articulation of the Board's reasons for finding the [USB's] opinion convincing, but rather a mere restatement of [the USH's medical] opinion in conjunction with the denial of presumptive service connection." *Id*.

In contrast to the circumstances in *Stone*, the Board here noted the C&P Director's discussion of (1) Mr. Parrish's in-service radiation exposure history, including dose rem data, (2) race, sex, age, and personal data, (3) family history of cancer, postemployment history, and 29-year history of smoking, (4) the CPHEHO's report, which found no statistically significant association between Mr. Parrish's conditions and dose response to radiation exposure, and (5) the fact that COPD and

13

pulmonary fibrosis were diagnosed 40 years after in-service ionizing radiation exposure. Thus, the C&P Director's decision was neither cursory nor lacking in discussion, and the Board did not err in relying on it. Mr. Parrish also fails to otherwise point to any evidence that the C&P Director's decision failed to substantively comply with § 3.311(c)(1) or our holding in *Hilkert*, *supra*.

Although Mr. Parrish asserts that the stated information still fails to explain adequately the C&P Director's ultimate decision, he ignores the commonsense meaning of each stated fact, and that the C&P Director's conclusion flows naturally from the sum of those meanings. For instance, the C&P Director noted that (1) the CPHEHO report found no statistically significant association between Mr. Parrish's conditions, (2) smoking is a factor, and (3) Mr. Parrish admitted that he smoked for 29 years and Mr. Parrish also was not diagnosed with his lung conditions until 40 years after in-service exposure. The C&P Director, concluded, then, that there is no reasonable possibility that Mr. Parrish's conditions resulted from exposure to in-service radiation.

Although not stated with the highest degree of precision, the C&P Director's decision is understandable and the Board did not commit error when it relied on it. *See McClain v. Nicholson*, 21 Vet.App. 319, 321 (2007) (noting that although clarity certainly is preferred, it "is not and cannot be demanded in every instance or finality would forever be delayed pending perfection in draftsmanship"); *see also Maxson v. Gober*, 230 F.3d 1330, 1333 (Fed. Cir. 2000) (recognizing that lengthy periods of time without symptoms or treatment can weigh against a claim); *Polovic v. Shinseki*, 23 Vet.App. 48, 54 (2009) (noting that the Board may not award benefits when the award would be based upon pure speculation). This is particularly so because it is the Board that ultimately is required by statute to explain its decisionmaking. 38 U.S.C. § 7104(d)(1); *see*, *e.g.*, *Gabrielson v. Brown*, 7 Vet.App. 36, 40 (1994) (discussing that it is the Board, not medical examiners, that has the duty to discuss favorable evidence in a statement of reasons or bases).

Similarly, we find unsupported Mr. Parrish's assertions that the Board inadequately explained why both the CPHEHO's opinion and the C&P Director's decision outweighed his private physician's report. As we explained in *Nieves-Rodriguez*, and as was noted by the Board below, the foundation and rationale of a medical opinion are crucial when the Board compares medical opinions and assesses the weight to be provided thereto. *Id.* It is axiomatic that a medical examiner must be informed of the "relevant facts" in order to render a probative opinion. *Id.* at 303.

14

The Board here noted that Mr. Parrish's private physician essentially opined that Mr. Parrish's conditions were caused by several factors including radiation exposure and smoking, and stated that he was not aware of Mr. Parrish's actual radiation exposure count. In contrast, the Board explained that the CPHEHO's opinion was based upon the worst-case estimate of in-service radiation exposure and that the CPHEHO found it unlikely that Mr. Parrish's lung conditions were caused by in-service radiation exposure. Although Mr. Parrish argues that the Board did not explain why knowledge of the amount of radiation is particularly important, it is commonly understood that the degree of radiation exposure is a factor for consideration when assessing the relationship of disease to radiation exposure. Moreover, VA regulations require radiation exposure dose estimates, *see* 38 C.F.R. § 3.311(a), and Mr. Parrish's private physician essentially said that he could not render an accurate opinion without such information.

Mr. Parrish's final argument is that the Board did not explain why it found the C&P Director's decision was more probative than his private physician's opinion when the record contains no evidence that the C&P Director is a qualified medical professional. As noted by the Secretary, the C&P Director's decision is not medical evidence per se. Rather, it is a decision that is based upon the factors in § 3.311(e), as well as an advisory medical opinion. *Hilkert*, 12 Vet.App at 149 (recognizing that, because the decision under § 3.311(c) is to be based on sound scientific evidence, an advisory medical opinion may be requested). The Board explained that the C&P Director based his decision on the CPHEHO's medical opinion, which was found to be more probative than the medical opinion provided by Mr. Parrish's private physician. Accordingly, the Board's weighing of the medical evidence is understandable and facilitative of judicial review. *See Allday*, *supra*. And, based on the record on appeal, the Board's findings are plausible and not clearly erroneous. *See Russo* and *Owens*, both *supra*; *see also Gilbert*, *supra*.

## III. CONCLUSION

Upon consideration of the foregoing, the Board's February 9, 2009, decision is AFFIRMED.

DAVIS, Judge, concurring: While I concur with the judgment of the majority opinion, I write separately to express my disagreement with the majority's analysis and resolution of Mr. Parrish's

15

argument that, even if the USB had the authority to make a delegation to the C&P Director to conduct the radiation determination required by 38 C.F.R. § 3.311(c), he never did so. Mr. Parrish argues that there is no evidence in the record that a delegation memorandum designating the C&P Director was executed, as required by VA policy. *See* II.B.3, *ante.* The majority states: "it is ... not surprising that a delegation memorandum is not in the record on appeal . . . and the simple fact that such a memorandum is not in the record fails to overcome the presumption that government officials generally discharge their duties in accordance with the law and governing regulations." *Ante* at 10.

"There is a presumption of regularity under which it is presumed that government officials 'have properly discharged their official duties.'" *Ashley v. Derwinski,* 2 Vet.App. 307, 308 (1992) (quoting *United States v. Chem. Found., Inc.,* 47 S. Ct. 1 (1926)). "However, '[t]he presumption of regularity is not absolute; it may be rebutted by the submission of clear evidence to the contrary.'" *Jones (Raymond) v. West,* 12 Vet.App. 98, 100 (1998) (quoting *Ashley,* 2 Vet.App. at 309) (alteration in original).

My problem with the majority's analysis is the leap the majority takes in applying the presumption of regularity to the delegation area–an area that is a bit more involved than simply performing a procedural or ministerial act. Significantly, in previous decisions, this Court has applied the presumption of regularity to issues primarily involving the delivery or receipt of mail, which are procedural and ministerial acts. In *March v. Nicholson,* the Court recounted that it had

> applied the presumption of regularity to processes and procedures throughout the VA administrative process. *See, e.g., Crain v. Principi,* 17 Vet.App. 182, 186 (2003) (applying the presumption of regularity to RO's mailing of a Statement of the Case to a veteran); *Redding v. West,* 13 Vet.App. 512, 515 (2000) (applying the presumption of regularity as to whether RO received the veteran's power of attorney); *Baldwin v. West,* 13 Vet.App. 1, 5-6 (1999) (applying the presumption of regularity as to whether RO examined and considered service medical records); *Schoolman v. West,* 12 Vet.App. 307, 310 (1999) (applying the presumption of regularity as to whether RO sent to claimant the application form for dependency and indemnity compensation); *Davis* [*v. Brown*]*,* 7 Vet.App. [298,] 300 [(1994)] (applying the presumption of regularity to the Board's mailing of a copy of a Board decision to a veteran); *Mindenhall* [*v. Brown*]*,* 7 Vet.App. [271,] 274 [(1994)] (applying the presumption of regularity to a RO's mailing of a VA decision to a veteran).

19 Vet.App. 381, 385 (2005). More recently, the Court has applied the presumption of regularity to issues involving mailings or filings in *Kyhn v. Shinseki,* 24 Vet.App. 228 (2011); *Fithian v.*

*Shinski,* 24 Vet.App. 146 (2010); *Posey v. Shinseki,* 23 Vet.App. 406 (2010); *Irwin v. Shinseki,* 23 Vet.App. 128 (2009); and *Clarke v. Nicholson,* 21 Vet.App. 130 (2007).

Here, the majority seeks to extend the presumption of regularity in a manner that would require Mr. Parrish to (1) realize that a document he did not know existed actually did exist, (2) search files maintained by VA for that document, and (3) obtain the document. Moreover, the document at issue here, a delegation of authority, is a document that VA would both initiate and have total control over creating, not Mr. Parrish. For the majority to imply that Mr. Parrish somehow failed to produce a delegation document shifts the burden from the Secretary, who is in the best position to produce evidence of the existence of a delegation, to the appellant–the person in the worst position to produce such a delegation document.

In *Johnson (L.E.) v. Shinseki,* 23 Vet.App. 344 (2010), Judge Hagel wrote a concurring opinion addressing a similar conundrum, where, in order to rebut the presumption of regularity, the veteran needed evidence that "remain[ed] exclusively in VA's control." 23 Vet.App. at 350 (Hagel, J., concurring). Judge Hagel wrote that this created "an unduly onerous path for a veteran to rebut the presumption of regularity." *Id.* He continued: "In practice, requiring a veteran to navigate the VA administrative system to which he has no access to find out whether [documents were transmitted in a regular manner according to procedure] would transform the rebuttable presumption of regularity into an essentially irrebuttable presumption." *Id.* Just as Judge Hagel was not willing to extend the presumption of regularity in *Johnson*, I am not willing to extend the presumption of regularity to such a point in this case.

Alternatively, in order to comply with the majority's stance, Mr. Parrish could have (1) recognized that a delegation of authority could have allowed the USB to comply with the statute and that a designation was not contained in the record and (2) called this deficiency to the Court's and the Secretary's attention in his initial brief. The Secretary could have then searched VA's files and provided the delegation memorandum or responded in his brief that a designation had been made from the USB to the C&P Director in a format other than a delegation memorandum.

In his initial brief, Mr. Parrish specifically argued that "[n]othing in [§] 3.311 provides that the USB may delegate this responsibility to the C&P Director" (Appellant's Brief at 7) and that "the Secretary cites nothing in the record indicating that the USB delegated his responsibility under

section 3.311(c) to the C&P Director *in this case*" (Appellant's Reply Brief at 4) (emphasis in original).

Yet the Secretary, in his response, merely cited to 38 C.F.R. § 3.100 and stated that the USB "has the general authority to designate supervisory personnel of [VA] to make findings under applicable law and regulations," and that the C&P Director reports directly to the USB. Secretary's Brief at 6. The Secretary's brief would have been the appropriate time to point the Court's and Mr. Parrish's attention to the applicable provision of the M21-MR, which effectively designates the C&P Director to exercise the authority delegated in § 3.100(a). It would have also been appropriate and in compliance with Rule 30 of the Court's Rules of Practice and Procedure for the Secretary to file a letter of supplemental authority with the Court citing this pertinent and significant authority if it were newlydiscovered after his briefs were filed. (However, if VA's procedure truly has been so clear cut and the delegation so long standing, surely the Secretary should have presented the argument to the Court at the first possible opportunity, rather than the last.) Yet the Court notes that it was only at oral argument that the Secretary argued that the M21-MR provision constitutes a delegation of the USB's authority in accordance with § 3.100(a). For the majority to conclude that Mr. Parrish should have obtained the document in order to rebut the presumption of authority–when the Secretary could not be bothered to provide it to the Court until oral argument–is truly placing an undue burden on the appellant.