# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-2574

VICTOR B. SKAAR, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 2, 2020                                            December 17, 2020)

*Lily Halpern* and *Molly Petchenik*, law students, with whom *Michael J. Wishnie*, all of New Haven, Connecticut, appeared for the appellant.

*Mark D. Vichich*, with whom *William A. Hudson, Jr.*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Megan C. Kral*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before BARTLEY, *Chief Judge*, and ALLEN and MEREDITH, *Judges*.

ALLEN, *Judge*, filed the opinion of the Court. MEREDITH, *Judge*, filed an opinion concurring in part in the result and dissenting in part.

ALLEN, *Judge*: In January 1966, a United States Air Force B-52 bomber carrying four thermonuclear weapons collided with another aircraft over Spain. Two of the nuclear weapons the B-52 was carrying crashed into the ground and exploded near the village of Palomares. The non-nuclear explosions of these devices spread radioactive plutonium over the Spanish countryside. Appellant Victor B. Skaar was one of approximately 1,400 U.S. servicemembers, most from the Air Force, who responded to this tragic event and participated in cleanup activities.

In an April 14, 2017, decision, the Board of Veterans' Appeals denied Mr. Skaar service connection for leukopenia, which he claimed was due to exposure to ionizing radiation during the cleanup activities near Palomares. In addition to contesting the Board's denial of service connection for leukopenia before the Court, Mr. Skaar contends that the Board erred because it did not adjudicate what he claims is a pending appeal of a denied claim for service connection for skin cancer, also claimed as due to exposure to ionizing radiation.

Mr. Skaar sought to proceed as a representative of a class of veterans who had participated in the Palomares cleanup challenging both the exclusion of Palomares from the list of "radiation risk activities" under 38 C.F.R. § 3.309 as well as the accuracy of radiation dose estimates the Air Force provided in the context of 38 C.F.R. § 3.311.[1] On December 6, 2019, this Court, sitting en banc, held for the first time in its history that it may certify classes in the context of an individual appeal of a Board decision.[2] In doing so, as we explain in more detail below, we rejected Mr. Skaar's request to proceed as a representative of a class challenging the exclusion of Palomares as a "radiation risk activity" under § 3.309.[3] However, we concluded that his appeal could proceed as a class action with respect to his claim under § 3.311. The Court defined the class for which Mr. Skaar could serve as a representative as the following:

> All U.S. veterans who were present at the 1966 cleanup of plutonium dust at Palomares, Spain, and whose application for service-connected disability compensation based on exposure to ionizing radiation VA has denied or will deny by relying, at least in part, on the findings of dose estimates requested under 38 C.F.R. § 3.311, except those whose claims have been denied and relevant appeal windows of those denials have expired, or those whose claims have been denied solely based on dose estimates obtained before 2001.[4]

Today we address the merits of Mr. Skaar's appeal both on the claim for which we granted class certification as well as the issues he presses on an individual basis. We summarize our holdings here. Beginning with the class claim concerning radiation dose estimates, we hold that the Board failed to meet its obligation under 38 C.F.R. § 3.311(c) to ensure that dose estimates VA received from the Air Force constitute "sound scientific evidence." We will remand this issue to the Board so it may assess whether the dose estimates the Air Force has provided are based on such sound scientific evidence, providing an adequate statement of reasons or bases for the conclusion it reaches.

The questions before us concerning Mr. Skaar's individual claims fall into two categories: (1) The various arguments appellant advances concerning his skin cancer claim, and (2) whether

---

[1] *See* Appellant's Motion for Class Certification or Aggregate Resolution.

[2] *Skaar v. Wilkie* (*Skaar II*), 32 Vet.App. 156, 177-78 (2019) (en banc order). We had previously held that, in appropriate circumstances, we would certify classes in the context of petitions. *See Monk v. Wilkie*, 30 Vet.App. 167, 174 (2018) (en banc).

[3] *Skaar II*, 32 Vet.App. at 173-74.

[4] *Id.* at 201.

VA has unlawfully failed to include Palomares as a "radiation risk activity" under 38 C.F.R. § 3.309.[5] As to appellant's skin cancer arguments, we are unable to reach the merits of those claims because the Board did not address them. But though we lack jurisdiction to address the skin cancer claim on the merits, we do have jurisdiction to determine whether the Board erred in failing to address it. We hold that we must remand the skin cancer claim because VA failed to provide a Statement of the Case (SOC) in response to a valid Notice of Disagreement (NOD) appellant filed. Concerning the radiation risk activity under § 3.309, we hold that we lack jurisdiction to address the arguments that remain after the Court's class certification decision because appellant did not raise them before the Agency. And, as we explain, our class certification decision resolves the appeal on that issue as to all other matters.

We will proceed as follows. First, we will set out a basic statement of facts that applies generally to all the claims and that explains how this matter reached the Court. We will, however, provide more detailed facts in the context of our discussion of the specific claims later in our opinion. Second, we will describe the legal framework for awarding service connection for conditions claimed to be caused by exposure to ionizing radiation. Third, we will address the claim concerning radiation dose estimates under § 3.311 for which appellant represents a class. And finally, we will discuss appellant's two sets of individual claims concerning skin cancer and the lack of designation of the Palomares cleanup as a radiation risk activity under § 3.309.

## I. GENERAL BACKGROUND

### A. Factual Background

Appellant served in the United States Air Force from November 1954 to July 1981,[6] and he participated in and was present at the Palomares cleanup. In fact, as explained further below, he was in the "High 26" group of service members who had test results that, compared to test results of other Palomares cleanup workers, showed the highest exposure to radiation, and who were monitored for a period after the cleanup ended.[7] In 1998, he was diagnosed with leukopenia,

---

[5] As we noted, the en banc Court denied Mr. Skaar's request to represent a class with respect to the radiation risk activity issue under § 3.309. *See id.* at 173-74. However, as we explain below, the denial of class certification did not fully resolve this claim on an individual level.

[6] Record (R.) at 2.

[7] R. at 2124-28.

a decrease in white blood cell count.[8] His doctor opined that exposure to ionizing radiation "[h]istorically does appear to be the positive agent" causing leukopenia, but his doctor concluded that "we have been unable to prove this."[9] Appellant filed a claim for service connection for leukopenia in August 1998.[10] In February 2000, VA denied his claim because leukopenia is not a radiogenic disease VA recognizes as resulting from a "radiation-risk activity."[11]

In March 2011, appellant requested that VA reopen his claim.[12] The regional office (RO) requested a radiation exposure opinion from the Air Force.[13] In April 2012, the Air Force estimated that appellant's maximum total effective dose was 4.2 rem with a bone marrow committed dose of 1.18 rem, compared to annual dose limits of 5 and 50 rem, respectively, for those working in occupations typically involving radiation exposure.[14] Based on these estimates, the director of the Post 9/11 Environmental Health Program, writing for the Under Secretary for Benefits, advised in May 2012 that "it is unlikely that [appellant's] leukopenia . . . can be attributed to radiation exposure while in military service."[15] The RO denied appellant's claim in June 2012.[16] Appellant disagreed with the RO's denial and eventually perfected an appeal to the Board.[17]

In October 2013, a private physician opined that appellant's leukopenia "is likely related to exposure to heavy radioactive material in [1966]."[18] In June 2014, after the Air Force reevaluated its dose estimate methodologies, the Air Force provided VA with appellant's revised dose estimate,

---

[8] R. at 2157.

[9] *Id.*

[10] R. at 2155.

[11] R. at 2098.

[12] R. at 2077.

[13] R. at 1886. We will discuss the procedure for obtaining dose estimates in more detail below.

[14] R. at 1888-89. A rem (roentgen equivalent man) is a unit of measurement for radiation. One unit represents "the dosage of an ionizing radiation that will cause the same biological effect as one roentgen of X-ray or gamma-ray exposure." MERRIAM-WEBSTER DICTIONARY, https://www.merriam-webster.com/dictionary/rem (last visited Sept. 9, 2020).

[15] R. at 1877.

[16] R. at 1869.

[17] During this time, appellant raised a skin cancer claim based on his exposure to ionizing radiation. We will discuss the procedural history of that claim below in our analysis of that matter.

[18] R. at 39-40.

assigning him a new maximum total effective dose of 17.9 rem and a bone marrow committed dose of 14.2 rem.[19]

In a May 2015 decision, the Board found the Air Force's revised dose estimates were new and material evidence warranting the reopening of appellant's claim.[20] The Board remanded the claim to the RO because the Air Force's "revised assessment [was] significantly higher than the April 2012 assessment," and therefore, "another [dose estimate] opinion [was] warranted."[21] In August 2016, the Director of Compensation Service provided a dose estimate opinion based on a memorandum from the Deputy Chief Consultant, Post Deployment Health Services, who had reviewed the June 2014 Air Force dose estimate,[22] and medical literature about the medical effects of ionizing radiation.[23] The director found appellant's dose estimate "did not exceed 175.7 rem for the bone surface, 69.3 for the lungs and 8.4 rem for the liver" and that appellant's leukopenia was less likely than not related to his radiation exposure.[24] The RO again denied appellant's claim.[25] In September 2016, a private physician opined that appellant's leukopenia was "a result of exposure to ionizing radiation/plutonium."[26]

In the April 2017 decision on appeal, the Board denied appellant's claim seeking service connection for leukopenia.[27] The Board first noted that leukopenia was "not listed as a disease specific to radiation-exposed veterans," and thus presumptive service connection under 38 C.F.R. § 3.309 was "not for consideration."[28] In considering the dose estimate evidence under 38 C.F.R. § 3.311, the Board found the May 2012 dose estimate opinion lacked probative value "as it was based on an inaccurate dose estimate."[29] But, the Board found the August 2016 dose estimate

---

[19] R. at 1301, 1274-75.

[20] R. at 695-99.

[21] R. at 698.

[22] R. at 132.

[23] R. at 131.

[24] *Id.*

[25] R. at 113-14.

[26] R. at 38.

[27] R. at 2-12.

[28] R. at 5.

[29] R. at 10.

"highly probative" because it "was based on a review of the entire record," while appellant's private medical opinions were not as probative because "none offered any rationale for their statements."[30] Recall that the 2016 dose estimate from the Director of VA's Compensation Service was based on the revised 2014 dose estimate from the Air Force. Appellant appealed the Board's decision to the Court.

In February 2019, the Court, retaining jurisdiction over this appeal, remanded the matter to the Board for the limited purpose of providing a supplemental statement of reasons or bases addressing arguments appellant raised about whether the dose estimates constituted sound evidence under 38 C.F.R. § 3.311, but that the Board had failed to address.[31] In a March 2019 supplemental statement, the Board found that "on its face [the June 2014 revised dose estimate the Air Force provided] is based on sound scientific evidence" because it "was based on then recently re-evaluated internal processes which were initiated to ensure a comprehensive and consistent approach to dose estimates," and because the revised dose estimate "considered [appellant's] previously reported intake values based on the application of contemporary modes in his bioassay data collected in the 1960's."[32]

With respect to prior inconsistencies in the Air Force's dose methodologies, the Board stated that "just as it is prohibited from exercising its own independent judgment to resolve medical questions, the Board is not in a position to exercise such independent judgment on matters involving scientific expertise."[33] The Board explained it "is bound by regulations of the Department," and those regulations "provide specific instructions for obtaining dose estimates."[34] Thus, "[w]ithout an independent dose estimate, and without a rational basis to reject the competent findings of the Air Force," the Board found no evidentiary basis on which to grant service connection.[35] The Board also acknowledged that appellant could have submitted his own independent dose estimate but that he failed to do so.[36]

---

[30] R. at 10-11.

[31] *Skaar v. Wilkie* (*Skaar I*), 31 Vet.App. 16 (2019).

[32] Appellee's Response (Resp.) to the Court's February 1, 2019, Order at 4 (Mar. 29, 2019).

[33] *Id.* at 5 (citing *Colvin v. Derwinski*, 1 Vet.App. 171, 175 (1991)).

[34] *Id.* at 6.

[35] *Id.* at 5.

[36] *Id.* at 6.

After we received this supplemental statement from the Board, the Court certified a class with respect to the dose estimates but found that appellant lacked standing to pursue various other claims on behalf of the class, including those he asserted under 38 C.F.R. § 3.309. The en banc Court then returned this matter to a panel to address the merits. After the Court approved a joint notice plan, we held oral argument. We now decide both the class matter regarding dose estimates and the remainder of appellant's individual arguments.

### B. Legal Landscape for Claimed Exposure to Ionizing Radiation

Congress recognized that for veterans who were exposed to radiation during military service, the procedure for establishing direct service connection was "unduly burdensome because many veterans were having difficulties supporting their claims for compensation."[37] Thus, for veterans seeking compensation for diseases related to in-service exposure to radiation, Congress mandated and VA established special procedures to follow.[38]

With these provisions in place, a veteran may establish service connection for certain disabilities claimed as due to in-service exposure to ionizing radiation in one of three ways: (1) Via the presumption of service connection for radiation-exposed veterans under 38 U.S.C. § 1112(c) and 38 C.F.R. § 3.309(d)(3)(ii); (2) by meeting certain conditions specified in 38 C.F.R. § 3.311(b) for veterans with radiogenic diseases; or (3) by satisfying the elements of standard, direct service connection.[39] We note that in its decision the Board addressed a theory of standard, direct service connection, but appellant did not challenge the Board's findings before the Court. Therefore, this theory is not at issue.[40]

The first regulatory provision, 38 C.F.R. § 3.309(d), provides a presumption of service connection for radiation-exposed veterans with certain listed disabilities. The regulation defines "radiation-exposed veteran" as one who "participated in a radiation-risk activity" and lists specific radiation-risk activities.[41] For the purposes of this appeal, we note that the regulation does not

---

[37] *Hilkert v. West*, 12 Vet.App. 145, 148 (1991) (en banc) (citing *Wandel v. West*, 11 Vet.App. 200 (1998)).

[38] *See* Veterans' Dioxin and Radiation Exposure Compensation Standards Act, Pub. L. No. 98-542, 98 Stat. 2725 (1984).

[39] *See Rucker v. Brown*, 10 Vet.App. 67, 71 (1997) (citing *Combee v. Brown*, 34 F.3d 1039, 1043 (Fed. Cir. 1994)).

[40] *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc).

[41] 38 C.F.R. § 3.309(d)(3)(i) (2020).

include the Palomares cleanup in the regulation's list of radiation risk activities; nor does the regulation include leukopenia in the regulation's list of presumptive disabilities.

Under the second regulation, 38 C.F.R. § 3.311, the veteran must first establish that he or she suffers from a radiogenic disease that manifested within a certain time period.[42] Once a claimant has established a diagnosis of a radiogenic disease within the specified period and claims that the disease is related to his radiation exposure while in service, VA must obtain a dose assessment and request exposure data from the veteran's service branch.[43] For those claims that meet these threshold requirements, the RO is required to refer the case to the Under Secretary for Benefits.[44] If a condition is not recognized by regulation as a "radiogenic disease," the claim nevertheless must be referred to the Under Secretary for Benefits when a claimant "has cited or submitted competent scientific or medical evidence that the claimed condition is a radiogenic disease."[45]

The Under Secretary for Benefits "shall consider the claim with reference to the factors specified in paragraph (e) of this section and may request an advisory opinion from the Under Secretary for Health."[46] These factors include the probable dose, sensitivity of the involved tissue, and the time-lapse between exposure and onset of the disease.[47] How VA assesses these factors – requiring sound medical and scientific evidence – is critical to the matter before the Court, and we will return to that assessment in a moment. In making the required determination, the Under Secretary for Benefits may request an advisory opinion from the Under Secretary for Health because consideration of the claim "relies heavily on medical and scientific findings and analysis."[48] The Court has held that the Under Secretary for Benefits "is not explicitly required to refer to the factors listed in [§] 3.311(e), but should, rather, consult those factors as a point of reference when making recommendations to the [RO]."[49]

---

[42] 38 C.F.R. § 3.311(b)(2), (5) (2020).

[43] 38 C.F.R. § 3.311(a)(1)-(2); *see Hilkert*, 12 Vet.App. at 148.

[44] 38 C.F.R. § 3.311(b).

[45] 38 C.F.R. § 3.311(b)(5); *see also Parrish v. Shinseki*, 24 Vet.App. 391, 395 (2011).

[46] 38 C.F.R. § 3.311(c)(1).

[47] 38 C.F.R. § 3.311(e).

[48] *Hilkert*, 12 Vet.App. at 149; *see also* 38 C.F.R. § 3.311(c)

[49] *Stone v. Gober*, 14 Vet.App. 116, 120 (2000) (discussing *Hilkert*, 12 Vet.App. at 149-50).

The final determination of the Under Secretary for Benefits is then sent to the agency of original jurisdiction, which considers the opinion as evidence.[50] In *Stone*, the Court held that although the Under Secretary for Benefits was not required to explicitly consider each of the factors in § 3.311(e), "the cursory explanation provided . . . did not provide adequate rationale for the conclusion that there was no reasonable possibility that the veteran's cancer was caused by his in-service exposure as required by 38 C.F.R. § 3.311(c)(ii)."[51] Thus, the Court held that the Board erred in relying on that opinion.[52]

At oral argument, the Secretary's counsel argued that in subsections (1) and (2), § 3.311(c) provides the Under Secretary for Benefits with two choices: The Under Secretary may find either that there is sound evidence to support radiation exposure or there is no reasonable possibility that a veteran's disease is related to exposure.[53] Though the Secretary's counsel initially appeared to suggest that the requirement of sound scientific and medical evidence applies only to subsection (1) when the evidence supports granting the claim, but not to subsection (2) when the evidence supports denying the claim,[54] the Secretary later conceded that the sound-evidence requirement functionally applies to both subsections.[55]

We agree that the "sound evidence" requirement applies to both subsections (1) and (2) of § 3.311(c). To hold otherwise would mean that the standard for granting a claim based on exposure to ionizing radiation is different than the standard for denying a claim in a way that is materially adverse to veterans. And to hold otherwise would allow VA to deny a veteran benefits based on science that is not sound but only grant benefits only when the science is deemed sound. Such an interpretation would lead to absurd results, something courts should avoid.[56] Furthermore, it is clear from the Board's supplemental statement and the Secretary's filings throughout this appeal that both understood that whether the dose estimates were sound evidence was a key consideration

---

[50] 38 C.F.R. § 3.311(f).

[51] *Stone*, 14 Vet.App. at 120.

[52] *Id.*

[53] Oral Argument (O.A.) at 46:33-47:47, 47:50-48:14, *Skaar v. Wilkie* (*Skaar III*), U.S. Vet. App. No. 17-2574 (oral argument held Sept. 2, 2020), https://www.uscourts.cavc.gov/oral_arguments_audio.php.

[54] *Id.*

[55] *Id.* at 48:14-46.

[56] *See, e.g.*, *McNeill v. United States*, 563 U.S. 816, 822 (2011); *United States v. Wilson*, 503 U.S. 329, 334 (1992); *Timex V.I., Inc. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998); *Atencio v. O'Rourke*, 30 Vet.App. 74, 83 (2018).

under the regulation. Our decision will proceed on this interpretation of the regulation. We have no occasion in this appeal to consider whether, given the regulation's express language, the quality of evidence under subsection (1) differs from the quality of the evidence under subsection (2), and, therefore, we express no views on that question.

## II. THE CLASS CLAIM: DOSE ESTIMATES AND 38 C.F.R. § 3.311

*A. Additional Factual Background*

In our December 2019 order dealing with class certification, the Court provided a detailed history of the Palomares incident and radiation exposure, and we incorporate that history here.[57] However, we will summarize that history as it relates to the matter before us. Following the accident involving the B-52 bomber and the detonation of the two thermonuclear bombs near Palomares, Spain, appellant, along with nearly 1,400 U.S. military personnel, assisted in the cleanup efforts. To aid the effort to monitor possible radioactive exposure, many of those who worked in the cleanup effort gave urine and nasal swab samples. A group of 26 service members, including appellant, referred to as the "High 26,"were exposed to the greatest amount of radiation and were monitored for 18 to 24 months following the cleanup for signs of radiogenic conditions.[58] The Air Force discontinued these monitoring efforts in December 1967 when it determined these service members' "health is in no jeopardy from retention of radioactive materials as a result of participation in the [Palomares cleanup] operation."[59]

In evaluating disability claims based on ionizing radiation exposure, VA turns to the Air Force for information. In April 2001, a consulting firm, Labat-Anderson, evaluated the Air Force's dose methodology[60] and provided a report to the Air Force that established preliminary dose estimates for various subcategories of veterans.[61] The Labat-Anderson Report (LA Report or the Report) stated that the recorded urine dose intakes for Palomares veterans "seemed unreasonably high" compared to "environmental measurements" derived from air samples gathered 15 years

---

[57] *Skaar II*, 32 Vet.App. at 167-72.

[58] R. at 2124-28.

[59] R. at 2430.

[60] *See* R. at 2682-2818.

[61] R. at 2691.

after cleanup and "estimates prepared for other plutonium exposure cases – persons residing in the Palomares vicinity and Manhattan Project workers."[62] The LA Report found that these air samples and comparisons "provided a basis for preparing independent estimates of intake and dose using representative scenarios" rather than actual recorded dose intakes. [63] After comparing the "independent estimates" with the actual recorded dose intakes, the Report "excluded data from the on-site samples and attributed more significance to samples collected at later dates for the High 26 Group."[64]

The LA Report noted its findings "represent preliminary estimates that cannot be considered as definite" and "recommended further study to develop credible estimates of doses that are compatible with those calculated from environmental data."[65] Despite the caveats, the Air Force adopted the Report's dose estimate methodology in full.[66]

In December 2013, the Air Force concluded that an evaluation of its radiation dose methodology revealed "inconsistencies in dose assignment over the past 12 years" since the LA Report.[67] The Air Force found its methodology, which was based on the Report, "appeared to underestimate doses for some individuals" and thus the Air Force intended to "formally standardize [its] response methodology for radiation dose inquiries involving Palomares participants" by establishing dose estimates based on each veteran's specific duties.[68] The Air Force further stated it would reevaluate individual dose estimates it had already provided Palomares veterans.[69]

In the course of this appeal, further information related to the dose estimates the Air Force provides VA has become available. In February 2019, this Court issued a limited remand for the Board to provide a supplemental statement of reasons or bases addressing the dose estimates VA relies on for Palomares veterans.[70] Appellant had the opportunity to submit more information

---

[62] R. at 2701.

[63] R. at 2691.

[64] R. at 2795.

[65] *Id.*

[66] R. at 1580-81, 3508-511.

[67] R. at 1580.

[68] *Id.*

[69] R. at 1581.

[70] *Skaar I*, 31 Vet.App. at 18-20.

about the dose estimates to VA, which he did. Included in that information was a December 2017 report from Dr. Frank von Hippel that called into question the Air Force's reliance on the LA Report.[71] Dr. von Hippel concluded that "the Air Force's dose estimates have huge uncertainties and the maximum doses incurred by those not in the 'High 26,' could be hundreds of times higher than those that the Air Force has recommended to the VA for determination of benefits."[72]

Additionally, in August 2020, the Secretary provided the Court with a recent report from the Air Force that, in part, responds to Dr. von Hippel's paper.[73] In the report, the Air Force defends its use of dose estimate methodologies and notes that it "provides significant benefit of doubt in favor of veterans."[74] Both the Secretary and appellant note that this recent report was not before the Board and that the Court lacks jurisdiction to evaluate it in the first instance.[75] We refer to this submission merely to acknowledge its existence. In no way do we base our decision on this recent report.

### B. Parties' Arguments

On behalf of the class the Court certified, appellant challenges the Air Force dose estimates based on the LA Report that VA relies on for Palomares veterans. He argues that pursuant to 38 C.F.R. § 3.311(c)(2)(ii), VA is required to rely on sound scientific and medical evidence and that the Air Force dose estimates do not meet that standard. Thus, he asserts that VA's reliance on those estimates is arbitrary, capricious, an abuse of discretion or not otherwise in accordance with law, or, in the alternative, that VA's reliance on the estimates violates the Due Process Clause of the Fifth Amendment. The Secretary counters that in relying on the Air Force's dose estimates the Board made no clear errors of fact. He urges that we affirm the decision on appeal. Because the Board failed to explain whether the dose estimates constituted sound evidence, we will set aside the Board's decision and remand the matter for the Board to consider this issue and explain the bases for its determinations.

### C. Legal Background

---

[71] R. at 2635-50.

[72] R. at 2650.

[73] *See* Secretary's Notice of Case Development (Aug. 25, 2020).

[74] *Id.* Exhibit at 61.

[75] *See id.* at 2; O.A. at 4:55-5:15.

As we noted, a veteran may seek service connection for a disability caused by exposure to ionizing radiation by establishing the standard elements of direct service connection. But direct service connection is not at issue here. Rather, here we consider that for a veteran with a disability caused by exposure to ionizing radiation, two regulatory paths can lead to service connection. The first path, provided in 38 C.F.R. § 3.309, with its focus on radiation risk activities, is not relevant to the class claim. The second, provided in 38 C.F.R. § 3.311, applies to Palomares veterans and is central to the claims of Mr. Skaar and the class he represents.

Specifically at issue, § 3.311(c) requires the Under Secretary for Benefits to determine whether "sound scientific and medical evidence supports the conclusion [that] it is at least as likely as not" that a claimant's condition is the result of ionizing radiation exposure. "[S]ound scientific evidence" is defined as "observations, findings, or conclusions which are statistically and epidemiologically valid, are statistically significant, are capable of replication, and withstand peer review," and "sound medical evidence" is defined as "observations, findings, or conclusions which are consistent with current medical knowledge and are so reasonable and logical as to serve as the basis of management of a medical condition."[76]

The specific question whether a dose estimate is "sound scientific evidence" is a factual determination that the Court reviews for clear error.[77] We may overturn the Board's factual findings only if there is no plausible basis in the record for the Board's decision and the Court is "'left with the definite and firm conviction'" that the Board's decision was in error.[78] However, if the Court determines that the Board failed to follow applicable regulatory provisions when making its factual assessment about dose estimates, we will hold such a decision unlawful and set it aside as being "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[79] Finally, the Board must include in its decision a written statement of the reasons or bases for its findings and conclusions, adequate to enable an appellant to understand the precise basis for the Board's decision as well as facilitate review in this Court.[80]

---

[76] 38 C.F.R. § 3.311(c)(3).

[77] 38 U.S.C. § 7261(a)(4); *see Dyment v. West*, 13 Vet.App. 141, 144 (1999).

[78] *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[79] 38 U.S.C. § 7261(a)(3)(A).

[80] 38 U.S.C. § 7104(d)(1); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995); *Gilbert*, 1 Vet.App. at 56-57.

*D. Analysis*

Appellant contends that the dose estimates the Air Force provided to VA and on which VA relied, in part, to deny service-connection claims to Mr. Skaar and the class do not constitute the sound medical or scientific evidence that § 3.311(c) requires. He provides detailed arguments regarding the science behind the Air Force's methodologies and the LA Report in particular. The Court, however, is limited in considering the scientific evidence presented in this matter. First, we have no jurisdiction to directly review what the Air Force has done to provide VA with dose estimates because our jurisdiction is limited to the review of final Board decisions.[81] We have no authority to dictate to the Air Force how dose estimates are created and nothing we say should be construed as doing so.

We are also constrained by our statutory duty to *review* what the Board has done.[82] No matter how deferential our standard of review may be, when the Board does not explain its reasons for reaching a factual finding, the Court's ability to review anything is frustrated. As the United States Court of Appeals for the Federal Circuit held, "[t]he Court of Appeals for Veterans Claims, as part of its clear error review, must *review* the Board's weighing of the evidence. It may not weigh any evidence itself."[83]

With these constraints in mind, we turn to how the Board assessed the dose estimates the Air Force provided for Mr. Skaar. In the April 2017 decision on appeal, the Board failed to address the methodology the Air Force used to measure appellant's radiation exposure, despite his direct challenge concerning that issue.[84] Recognizing this error, the en banc Court retained jurisdiction and remanded the matter for the Board to address appellant's argument.[85] In the March 2019 supplemental statement of reasons or bases in response to our remand, the Board found that "on its face" the Air Force's dose estimate constituted sound scientific evidence.[86] However, the Board also noted that it could not make an independent judgment on "matters involving scientific

---

[81] *See* 38 U.S.C. § 7266(a); *see also Bond v. Derwinski*, 2 Vet.App. 376, 377 (1992) (per curiam order).

[82] *See* 38 U.S.C. § 7261(a)(3).

[83] *Deloach v. Shinseki*, 704 F.3d 1370, 1380 (Fed. Cir. 2013) (emphasis in original).

[84] R. at 106-07, 778-83.

[85] *Skaar I*, 31 Vet.App. at 18-20.

[86] Appellee's Resp. to the Court's February 1, 2019, Order at 5 (Mar. 29, 2019).

expertise" and that it was "bound by regulations of the Department," which provided specific instructions on obtaining dose estimates.[87] The Board provided an inadequate statement of reasons or bases for concluding that the Air Force's dose estimate constituted sound scientific evidence.

First, the Board's finding that the dose estimate is sound evidence "on its face" without more detail essentially amounts to the Board saying the dose estimate is sound "because I say so." In different contexts the Court has held that such a conclusion without reasoning is unacceptable and does not allow for meaningful judicial review.[88] Relatedly, the Board's statement of reasons or bases for accepting the Air Force dose estimate seems internally contradictory. If the Board is unable to make an independent judgment on such matters, then it is unclear to the Court how it could also find the dose estimate sound "on its face."

Perhaps most critically, the Board's statement of reasons or bases on this issue is deficient because the Board appeared to believe it was bound to accept uncritically the dose estimate the Air Force provided. The Board commented that it was "bound by the regulations of the Department."[89] That is certainly true.[90] But the relevant regulation imposes on VA the duty to base its determinations on sound scientific evidence. At oral argument, the Secretary appeared to adopt the Board's flawed view of its responsibility, arguing that VA is unable to change the information it receives from the Air Force and is bound by it.[91] This view is flawed because it is not consistent with § 3.311, which, as we have noted, provides that *VA* is responsible for determining whether the evidence on which it relies is sound. It may be that VA cannot change the estimate the Air Force provides, but that does not mean it may ignore its obligation to ensure that the evidence on which it relies is sound. After all, the dose estimate is at base nothing more than a piece of evidence that the Board must consider in its role as factfinder. Other regulations specifically mandate that on various matters VA is bound by findings of the Department of Defense or the service branches.[92] VA knows how to write regulations making other agencies' determinations binding on

---

[87] *Id.*

[88] *See, e.g.*, *Cantrell v. Shulkin*, 28 Vet.App. 382, 392 (2017).

[89] Appellee's Resp. to the Court's February 1, 2019, Order at 5.

[90] 38 U.S.C. § 7104(c).

[91] O.A. at 39:24-59.

[92] *See* 38 C.F.R. § 3.1(m) (2020) (providing that a "service department finding that injury, disease, or death occurred in line of duty will be binding" on VA); 38 C.F.R. § 3.12(a) (2020) ("A discharge under honorable conditions is binding on [VA] as to character of discharge."); *see also Duro v. Derwinski*, 2 Vet.App. 530 (1992) (holding that

itself. But VA did not do so in § 3.311, and VA is therefore required to do more than simply accept the Air Force's determinations as to dose estimates.

We agree with the Board's determination that whether the dose estimate evidence before it is sound may require scientific expertise beyond what the Board can provide independently.[93] But that does not mean that the Board may abdicate its responsibility to assess whether the evidence before it is "sound." After all, it is the Board's responsibility, as factfinder, to determine the credibility and weight to be given to the evidence before it.[94] In fact, the definition of "sound scientific evidence" in § 3.311(c) requires an understanding of what is statistically significant in dose estimate testing and whether such testing is capable of replication and can withstand peer review. And though the Court recognizes that it may not be proper for the Board to opine on such scientific determinations, just as it may not make its own independent medical judgments,[95] that recognition does not mean that the Board can simply accept what the Air Force or any entity says about a dose estimate. Rather, it means that the Board should seek appropriate evidence to make its decision, just as it does with respect to medical matters. The type of expert assistance the Board may need will depend on the facts before it, just as it does when the Board assesses medical matters.

The problem here is that the Board did not provide any explanation beyond asserting that it could not make an independent determination about whether the Air Force dose estimate was sound, other than an unexplained finding that it was sound "on its face." In sum, the Board must provide more in the way of explaining how and why it found the Air Force dose estimate sound evidence if the Board relies on that evidence to deny appellant's claim. Because it did not do so, remand is required.[96]

---

pursuant to 38 C.F.R. § 3.203 a service department finding as to qualifying service for VA benefits is binding on VA).

[93] *Cf. Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991) (holding that the Board "must consider only independent medical evidence to support [its] findings rather than provide [its] own medical judgment in the guise of a Board opinion").

[94] *See Washington v. Nicholson*, 19 Vet.App. 362, 369 (2005); *Owens v. Brown*, 7 Vet.App. 429, 433 (1995).

[95] *See Kahana v. Shinseki*, 24 Vet.App. 428, 434-35 (2011); *Colvin*, 1 Vet.App. at 172.

[96] *See Stone*, 14 Vet.App. at 120.

To guide the Board on remand,[97] we underscore that if the Board without analysis simply accepts the Air Force's determinations, the Board fails to follow an applicable regulatory provision. Such a lack of reasoning renders a Board decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[98] In determining whether agency action is arbitrary and capricious under the Administrative Procedures Act (APA), courts look to the agency's reasoned decisionmaking concerning the action at issue.[99] Under section 7261, our review of Board decisions is functionally equivalent to "arbitrary and capricious" review under the APA.[100] In *Motor Vehicle Manufacturers Association of the United States v. State Farm Insurance*, perhaps the leading case on "arbitrary and capricious" review, the Supreme Court held that the National Highway Traffic Safety Administration's (NHTSA's) rescission of crash protection requirements was arbitrary and capricious,[101] because the NHTSA had failed both to address the change fully and to explain why it had ignored some of the research before it.[102] The Court explained that "the agency must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made."[103]

VA has "never provided a clear and coherent explanation" for relying on the Air Force dose estimates, despite the regulatory requirement, that is, the requirement in § 3.311, that VA determine whether the evidence on which it relies is sound.[104] When reviewing a different agency action, the Court of Appeals for the District of Columbia Circuit captured well the situation we face: "We do not mean to suggest that the record mandates a conclusion contrary to the agency's. Rather we simply find that [the agency] has never articulated the standards that guided its analysis."[105] As we have said, here remand is required for the Board to provide an informed

---

[97] *See Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009).

[98] 38 U.S.C. § 7261(a)(3)(A) (requiring the Court to hold unlawful and set aside Board decisions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law").

[99] *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Ins.*, 480 U.S. 29, 42-43 (1983).

[100] *See Gilbert*, 1 Vet.App. at 58 (relying on the definition of "arbitrary and capricious" provided in *State Farm)*.

[101] *Id.*

[102] *Id.* at 43.

[103] *Id.* at 43 (internal quotation marks omitted).

[104] *See Tripoli Rocketry Ass'n v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 437 F.3d 75, 81 (D.C. Cir. 2006) (applying the "reasoned decisionmaking" standard).

[105] *Id.*

analysis about whether the Air Force dose estimate is sound medical or scientific evidence sufficient to facilitate judicial review and avoid arbitrary and capricious decisionmaking.[106]

We recognize that, at oral argument, the Secretary's counsel offered a detailed explanation of the history of the Air Force dose estimate methodology.[107] The Court appreciates the time and effort counsel put into gaining an understanding the complex science at issue here and into discussing this issue during oral argument. However, it ultimately is not his prerogative to explain what the Board did not. As we have often said, the Secretary cannot make up for the Board's deficient statement of reasons or bases.[108]

In sum, we hold that § 3.311(c) requires that VA determine whether the dose estimates provided by the Air Force constitute sound medical and scientific evidence. Because the Board did not provide an adequate statement of reasons or bases for its determination regarding this question, remand is required.

Because this holding applies to the certified class, we pause for a moment to address the our dissenting colleague's concerns with respect to certifying the class and applying our holding as to the class members. First, our colleague disputes our jurisdiction to decide the claims of class members and to consider information obtained as result of the Court's limited remand. The en banc Court has addressed these matters in its class certification proceedings, and we are not at liberty to revisit them today. Relatedly, our dissenting colleague suggests that the Court decertify the class in light of our decision to remand Mr. Skaar's claim. Again, we are not inclined to revisit the class certification, because neither party has asked us to do so. Furthermore, we see no change in the circumstances that led the en banc Court to certify the class in the first place. Finally, to the extent that our dissenting colleague raises concerns as to our applying our holding to the class, at this stage in the litigation these concerns are premature. Our holding at this stage is unremarkable – the decision on the class claim applies to the class. It may be that at some point this panel or another

---

[106] *See Tucker v. West*, 11 Vet.App. 369, 374 (1998).

[107] O.A. at 29:10-33:40.

[108] *See In re Lee*, 277 F.3d 1338, 1345-46 (Fed. Cir. 2002) ("[C]ourts may not accept appellate counsel's *post hoc* rationalization for agency action." (quoting *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962))); *McCray v. Wilkie*, 31 Vet.App. 243, 258 (2019) ("[T]he Secretary's impermissible post-hoc rationalization cannot make up for shortcomings in the Board's assessment."); *Simmons v. Wilkie*, 30 Vet.App. 267, 277 (2018) (holding that the "Court cannot accept the Secretary's post-hoc rationalizations" to cure the Board's reasons-or-bases errors); *Smith v. Nicholson*, 19 Vet.App. 63, 73 (2015) ("[I]t is not the task of the Secretary to rewrite the Board's decision through his pleadings filed in this Court.").

could be called on to interpret how this decision applies in another context, perhaps in connection with an action brought to enforce our decision. On the other hand, there may never be a case in which the Court is called on to address the issue. And though we cannot predict such a situation will arise, we know one thing for certain: The time to consider the dissent's concerns is decidedly not today.

### III. INDIVIDUAL CLAIM: SKIN CANCER

#### A. Additional Factual Background

During a January 2013 VA examination, the examiner diagnosed appellant with skin cancer.[109] Appellant requested that his case be reviewed to determine whether his skin cancer was linked to his exposure to ionizing radiation. VA obtained a dose estimate. That dose estimate found the total probability of causation between his skin cancer and his radiation exposure to be 35.13%.[110] In March 2014, the RO denied appellant's skin cancer claim.[111]

In a May 2014 statement, appellant requested that VA "move on with the important issues" and noted his radiation exposure and skin cancer.[112] Based on the Air Force's revised dose estimates, VA sought additional opinions regarding appellant's skin cancer. In a statement VA received in August 2014, appellant generally contested the adjudication of his Palomares-related claims and the regulations that governed that adjudication.[113] He did not, however, identify any specific disability.

In a September 2014 rating decision, VA continued to deny appellant's skin cancer claim.[114] Later that same month, appellant acknowledged receipt of that rating decision but noted he had not received the March 2014 rating decision.[115]

In November 2014, appellant submitted several documents to VA related to his skin cancer claim. First, he submitted an "Application for Disability Compensation and Related Compensation

---

[109] R. at 1645.

[110] R. at 1530-35.

[111] R. at 1358-79.

[112] R. at 1305.

[113] R. at 1252-53.

[114] R. at 1180-97.

[115] R. at 1153.

Benefits," requesting that his skin cancer claim be reopened and adjudicated based on his exposure to Agent Orange.[116] Additionally, he submitted a letter noting that his skin cancer claim was denied in March and September 2014 and stating that he had "reopened the claim for service connected compensation as a result of [his] exposure to Agent Orange."[117] With his letter he included medical evidence and other documents. VA construed these documents as a request to reopen the previously denied claim for service connection for skin cancer. In a February 2015 letter, appellant again disputed the denial of his skin cancer claim and provided a summary of the evidence he believed warranted granting the claim.[118]

In an August 2015 rating decision, the RO denied reopening.[119] The evidence of record does not show, nor does appellant argue, that he appealed the August 2015 rating decision.

### B. Parties' Arguments

Appellant raises several substantive arguments regarding how VA adjudicated his skin cancer claim. First, he contends that VA's refusal to include basal cell skin cancers and melanomas as radiation-exposure diseases under 38 C.F.R. § 3.309(d)(2) is arbitrary, capricious, an abuse of discretion, or not otherwise in accordance with law under the APA.[120] He also asserts that VA violated the APA by changing its skin cancer causation analysis without providing him notice. He further argues that the Board violated its duty to assist by failing to consider all evidence of record in denying his skin cancer claim. Recognizing that the Court may not be able to reach these substantive arguments, appellant argues in the alternative that the Board erred in failing to consider whether he had appealed the denial of his skin cancer claim. He points to several different documents that he alleges could be construed as NODs challenging the March and September 2014 rating decisions that denied his skin cancer claim.[121] The Secretary responds that the Court does not have jurisdiction over this matter in any respect because the Board did not address it.

---

[116] R. at 819-21.

[117] R. at 758.

[118] Supplement to the Record of Proceedings at 727.

[119] R. at 178-209.

[120] As we explained above, section 7261, not the APA, governs this Court's review of whether VA action was arbitrary and capricious. However, the standard under both statutes is materially the same. In his reply brief, appellant clarified that he raised his challenge under both the APA and section 7261. *See* Reply Brief at 9.

[121] Reply Br. at 2-5.

We hold that we are unable to reach appellant's arguments on the merits because the Board did not consider the skin cancer claim; the Board addressed only appellant's claim for service connection for leukopenia. Our jurisdiction is limited to review of final Board decisions, and here, there is nothing to review about skin cancer. [122] However, we conclude that appellant submitted a valid NOD with respect to the skin cancer denial and will remand the matter for the issuance of an SOC.

### C. Legal Background

Under the regulations in effect when appellant submitted the documents he argues are NODs, [123] VA defined an NOD as "[a] written communication from a claimant or his or her representative expressing dissatisfaction or disagreement with an adjudicative determination by the agency of original jurisdiction and a desire to contest the result."[124] An NOD "must be in terms which can be reasonably construed as disagreement with that determination and a desire for appellate review," but "special wording is not required."[125] As with all submissions, in determining whether an NOD has been filed, "'VA has always been, and will continue to be, liberal in determining what constitutes [an NOD].'" [126] Thus, "[i]n determining whether a written communication constitutes an NOD, the Court looks at both the actual wording of the communication and the context in which it was written."[127]

"[A]n NOD initiates appellate review in the VA administrative adjudication process."[128] If a claimant files an NOD and no SOC is furnished in response, then the claim remains pending in

---

[122] *See* 38 U.S.C. § 7252(a).

[123] The Court notes that, in September 2014, VA amended § 20.201 to require the filing of an NOD on a standard form. *See* Standard Claims and Appeals Forms, 79 Fed. Reg. 57,660 (Sept. 25, 2014). That requirement applies "only with respect to claims and appeals filed 180 days after the date th[e] rule [was] published in the Federal Register as a final rule," i.e., after March 24, 2015. *Id.* at 57,686. This revision is not applicable here.

[124] 38 C.F.R. § 20.201 (2014).

[125] *Id.*

[126] *Palmer v. Nicholson*, 21 Vet.App. 434, 437 (2007) (quoting 57 Fed. Reg. 4088, 4093 (Fed. 3, 1992)).

[127] *Jarvis v. West*, 12 Vet.App. 559, 561 (1999).

[128] *Mason v. Brown*, 8 Vet.App. 44, 54 (1995) (citing 38 U.S.C. § 7105); *Holland v. Gober*, 10 Vet.App. 433, 436 (1997).

appellate status.[129] The Court reviews de novo whether a timely NOD has been filed.[130] When presented with evidence of a timely NOD to which the RO has not responded, the proper remedy is for the Court to vacate the Board decision and remand the matter for the Board to address it and order the appropriate procedural compliance.[131] Thus, the Secretary's arguments regarding the Court's lack of jurisdiction are not correct. We have jurisdiction "where the Board failed to address a claim or matter even though a valid NOD has been filed as to an RO's adverse decision on that claim or matter."[132]

## D. Analysis

Our analysis turns on the November 2014 letter appellant submitted to VA, along with the evidence he attached to it and the claim form he submitted that same month.[133] Although in his November 2014 submission appellant requested that his denied skin cancer claim be reopened and considered in light of his exposure to Agent Orange, his submission could not constitute a request to reopen a previously denied claim because the submission was filed within the 1-year period to appeal the March and September 2014 denials and those denials had not yet become final.[134] "[A] claim becomes final and subject to a motion to reopen only after the period for appeal has run."[135]

In *Jennings v. Mansfield*, the appellant challenged a Board decision finding no clear and unmistakable error in a 1954 rating decision that found a doctor's letter was not a request to reopen.[136] The Federal Circuit affirmed a decision of this Court affirming the Board because it held that the rating decision would not have become final at the time the letter was submitted.[137] The court held that "a claim becomes final and subject to a motion to reopen only after the period

---

[129] *See Tablazon v. Brown*, 8 Vet.App. 359, 361 (1995).

[130] *See Fenderson v. West*, 12 Vet.App. 119, 132 (1999); *Beyrle v. Brown*, 9 Vet.App. 24, 28 (1996).

[131] *Anderson v. Principi*, 18 Vet.App. 371, 374 (2004); *Manlincon v. West*, 12 Vet.App. 238, 240-41 (1999); *Fenderson*, 12 Vet.App. at 132; *Holland*, 10 Vet.App. at 36.

[132] *Anderson*, 18 Vet.App. at 378 (Steinberg, J., concurring); *see also Barringer v. Peake*, 22 Vet.App. 242, 244 (2008) (Court has jurisdiction to review whether the Board erred in failing to address a reasonably raised claim).

[133] *See* R. at 758, 819-21.

[134] 38 U.S.C. § 7105(b); *see Young v. Shinseki*, 22 Vet.App. 461, 466-67 (2009).

[135] *Jennings v. Mansfield*, 509 F.3d 1362, 1367-68 (Fed. Cir. 2007).

[136] *Id.* at 1367.

[137] *Id.* at 1368.

22

for appeal has run. Any interim submissions before finality must be considered by the VA as part of the original claim."[138] Relying on *Jennings*, this Court in *Young* held that a document received within one year of a September 1996 rating decision could not constitute a claim to reopen because the rating decision was not yet final.[139] Because the Board and the Court on de novo review also found the document did not constitute an NOD, appellant in that case was not entitled to an earlier effective date based on a unadjudicated claim.[140]

Similarly, here, appellant's November 2014 letter was received within 1 year of the March and September 2014 rating decisions, when neither had yet become final. Thus, at the time of the November 2014 letter, there was no prior final decision to reopen and his submission cannot constitute a request to reopen. Instead, the filing must be considered by VA as part of the original claim.[141] Having determined that the November 2014 letter was improperly adjudicated as a request to reopen, we now turn to whether it constitutes an NOD.

When we view the November 2014 letter in the context of the record as a whole, we hold that appellant's November 2014 letter, considered with the new claim form and medical evidence attached to the letter, qualifies as a valid NOD.[142] Appellant was pro se at the time, requiring us to sympathetically read his submissions.[143] Doing so, it seems to us that he disagreed with the RO's denial of his claim.[144] In the document, he explicitly refers to the March and September 2014 rating decisions that denied service connection for his skin cancer claim and expresses disagreement with those decisions. Appellant does not expressly call his submission an NOD, instead requesting reopening, but the regulation does not require any special wording.[145] Furthermore, in VA's pro-veteran, nonadversarial system, if there was a question as to what he intended to do in submitting the letter, VA could have inquired as to his intentions.

---

[138] *Id.*

[139] 22 Vet.App. at 466.

[140] *Id.* at 466-67.

[141] *Jennings*, 509 F.3d at 1368.

[142] *See* R. at 758.

[143] *See Comer v. Peake*, 552 F.3d 1362, 1367 (Fed. Cir. 2009).

[144] R. at 758.

[145] 38 C.F.R. § 20.201.

Although appellant requested reopening of his skin cancer claim in the November 2014 letter, we hold that the submission could not be a request to reopen because the March and September 2014 rating decisions had not yet become final. Because the November 2014 letter was a written communication that expressed disagreement with the RO's denial of his skin cancer claim, referenced the March and September 2014 rating decisions, and showed an intent to continue to pursue benefits for his skin cancer, we further hold that the November 2014 letter meets the applicable regulatory requirements for an NOD instead. And, because no SOC was ever issued regarding appellant's skin cancer claim and the Board did not address the matter, the proper remedy is to remand the matter for the Board to address it and, if needed, order the required procedural development.[146]

## IV. INDIVIDUAL CLAIM: RADIATION RISK ACTIVITY

### A. *Parties' Arguments*

Finally, appellant argues that the Palomares incident should be a radiation-risk activity recognized in 38 C.F.R. § 3.309(d) and that its exclusion is arbitrary and capricious or constitutes a violation of due process. We have already held in the context of our class certification order that he lacks standing to make this argument based on his leukopenia diagnosis because leukopenia is not included as a condition presumptively caused by exposure to ionizing radiation.[147] That decision meant appellant could not represent a class challenging § 3.309's exclusion of Palomares as a radiation risk activity based on the denial of a benefit for a presumptive condition. It also effectively validated the Board's conclusion that appellant was not entitled to service connection because leukopenia was not a listed condition under § 3.309.[148] But our decision on that question left one argument from appellant unresolved because it was not relevant to the class certification question issue the Court addressed.

Specifically, appellant contends that even though he does not have one of the conditions under § 3.309 for which service connection based on ionizing radiation exposure is presumed, VA

---

[146] *See Anderson*, 18 Vet.App. at 374; *Fenderson*, 12 Vet.App. at 132; *Holland*, 10 Vet.App. at 436; *see also* 38 C.F.R. § 19.38 (2020) ("When a case is remanded by the Board of Veterans' Appeals, the agency of original jurisdiction will complete the additional development of the evidence or procedural development required.").

[147] *Skaar II*, 32 Vet.App. at 173-74.

[148] R. at 5.

still should have considered whether the Palomares cleanup was a radiation risk activity to allow his inclusion on the Ionizing Radiation Registry (IRR). The IRR, maintained by the Veterans Health Administration (VHA), allows access to health examinations for those who are part of the program. Although he acknowledges that leukopenia is not a presumptive condition included in § 3.309, appellant asserts that he should have access to the periodic examinations under the IRR program. The Secretary contends that the Court lacks jurisdiction over this matter because the Board did not address it. We agree with the Secretary that this issue raises a jurisdictional impediment and we will dismiss this aspect of the appeal.

*B. Analysis*

The VHA established the IRR to provide "free clinical evaluations (history, physical and ancillary testing) and health risk communication for eligible Veterans with a history of ionizing radiation exposure during qualifying military service."[149] The IRR was also set up to maintain a database of those exposed to ionizing radiation during military service.[150] The IRR's definition of "radiation risk activity" is the same as that provided in § 3.309, which, as we have made clear, does not include Palomares.[151] The VHA directive establishing the program notes that

> [e]nrolled Veterans with health concerns related to ionizing radiation who do not qualify as participating in "radiation at-risk activities" are encouraged to discuss their concerns with their primary care provider who may consult or schedule an appointment with an Environmental Health Clinician to discuss their concerns. However, these Veterans are not eligible for inclusion in the registry database.[152]

In the April 2017 decision on appeal, the Board addressed service connection for leukopenia and no other claim. The Board acknowledged that leukopenia was not a presumptive condition and ended its discussion of § 3.309.[153] Appellant makes no argument about this finding and we see no error with it. Because appellant does not argue that he has a presumptive condition

---

[149] VHA Directive 1301 (Apr. 6, 2017).

[150] *Id.*

[151] *Id.* at 1.

[152] *Id.* at 8.

[153] R. at 5.

under § 3.309, he makes no argument about the decision the Board actually made. So, we deem him to have abandoned an appeal as to that decision.[154]

As to his IRR-exclusion argument, the Board did not address this issue, nor did appellant or the record reasonably raise it below. Indeed, there is no evidence in the record that suggests that appellant has ever applied to be included on the IRR or that he mentioned the issue to VA. Because (1) participation in the Palomares cleanup is not considered a radiation-risk activity, (2) leukopenia, the disability before the Board, is not a presumptive condition under § 3.309, and (3) appellant was not eligible for inclusion in the IRR, the issue was not reasonably raised below. Therefore, the Board was not obligated to address it, and the Court cannot reach this issue.[155]

## V. APPELLANT'S RIGHTS ON REMAND

Because the Court is remanding appellant's leukopenia and skin cancer claims, on remand, appellant may submit additional evidence and argument and has 90 days to do so from the date of VA's postremand notice.[156] The Board must consider any such additional evidence or argument submitted.[157] The Board must also proceed expeditiously.[158]

## VI. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the Court takes the following actions concerning the class and individual claims on appeal concerning the April 14, 2017, Board decision:

### CLASS CLAIM

The Court SETS ASIDE the April 14, 2017, Board decision denying service connection for leukopenia and REMANDS the matter for the Board to readjudicate appellant's claim under

---

[154] *See Pederson*, 27 Vet.App. at 281-86.

[155] *See* 38 U.S.C. § 7252(a) (providing this Court with "exclusive jurisdiction to review decisions of the Board of Veterans' Appeals"); *see also Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998) ("[T]he court's jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed.").

[156] *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order); *see also Clark v. O'Rourke*, 30 Vet.App. 92 (2018).

[157] *Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

[158] 38 U.S.C. §§ 5109B, 7112.

§ 38 C.F.R. § 3.311 in accordance with this opinion. This portion of our decision applies to the class certified in this matter, specifically to the following:

> All U.S. veterans who were present at the 1966 cleanup of plutonium dust at Palomares, Spain, and whose application for service-connected disability compensation based on exposure to ionizing radiation VA has denied or will deny by relying, at least in part, on the findings of dose estimates requested under 38 C.F.R. § 3.311, except those whose claims have been denied and relevant appeal windows of those denials have expired, or those whose claims have been denied solely based on dose estimates obtained before 2001.

### INDIVIDUAL CLAIMS

The Court SETS ASIDE the Board's April 14, 2017, decision with respect to appellant's skin cancer claim and REMANDS the matter for further proceedings consistent with this opinion. We DISMISS for lack of jurisdiction the Board's decision with respect to appellant's claims concerning 38 C.F.R. § 3.309.

MEREDITH, *Judge*, concurring in part in the result and dissenting in part: I agree with the majority that the April 14, 2017, decision of the Board of Veterans' Appeals (Board) denying the appellant's disability compensation claim for leukopenia must be set aside and the matter remanded for further adjudication and development, and I agree that the Court lacks jurisdiction to address the appellant's arguments related to 38 C.F.R. § 3.309 based on potential inclusion in the Ionizing Radiation Registry (IRR).[159] I write separately for three reasons: First, I cannot join the majority's analysis concerning the appellant's leukopenia claim and the scientific validity of dose estimates obtained by VA pursuant to 38 C.F.R. § 3.311, because of the materials on which the majority relies and the majority's treatment of the class. My position remains, as stated throughout these proceedings, that the Court does not have jurisdiction over most of the class members and further lacks jurisdiction to consider the nearly 3400 pages of evidence and argument submitted to the

---

[159] Although I concur in the determination regarding the Court's lack of jurisdiction, I do not adopt the panel's analysis or ultimate conclusion to "*DISMISS for lack of jurisdiction the Board's decision* with respect to appellant's claims concerning 38 C.F.R. § 3.309." *Ante* at 27 (emphasis added). The Board addressed § 3.309 solely with respect to the appellant's claim for leukopenia, finding that presumptive service connection was not warranted because leukopenia is not a presumptive condition, Record (R.) at 5, a theory the appellant abandoned here on appeal. *See Pederson v. McDonald*, 27 Vet.App. 276, 285 (2015) (en banc). The Board did not address inclusion in the IRR or a claim for skin cancer. Because the appellant has not, in my view, established that the Board erred by not addressing those matters, the Court lacks jurisdiction to consider his arguments. However, there is no Board decision to dismiss.

Board following the Court's limited remand, including any Board reference to that evidence in its supplemental analysis and the parties' arguments based on that evidence.[160] *See Henderson v. Shinseki*, 562 U.S. 428, 434-35 (2011) (reaffirming that objections to subject matter jurisdiction may be raised at any time); *see also Kontrick v. Ryan*, 540 U.S. 443, 455 (2004). Moreover, although I agree that the appellant's claim for leukopenia must be remanded, the majority states that "[t]his portion of our decision applies to the class certified in this matter," *ante* at 27, without explaining what that means in application to the class or without discussing the propriety of continuing the class action.

Second, I must respectfully dissent from the Court's conclusion that the appellant had submitted a valid Notice of Disagreement (NOD) with the VA regional office's (RO's) decision denying disability benefits for skin cancer. As explained below, the appellant's arguments concerning a pending NOD are late-raised and undeveloped and, in my view, legally incorrect.[161]

And, finally, I am compelled to comment that the result here demonstrates that the en banc Court's resurrection of the limited remand mechanism, for the purpose of deciding the appellant's motion for class certification, turned out not to be an effective tool. More than 3 years after the appellant appealed the April 2017 Board decision, the panel is left with no choice but to conclude that the Board provided an inadequate statement of reasons or bases for its decision and to remand the matter for readjudication—the same relief that the en banc Court could have, and in my view, should have initially provided. *See Skaar I*, 31 Vet.App. at 29-30, 32 (Pietsch, J., dissenting); *see also Skaar II*, 32 Vet.App. at 217-18 (Falvey, J., dissenting); *Skaar v. Wilkie* (*Skaar III*), No. 17-2574, 2020 WL 3564269, at *3 n.6 (July 1, 2020) (Meredith, J., dissenting). Instead, the parties and the en banc Court expended considerable time and resources debating the efficacy of conducting class actions in the appellate context and the bounds of the Court's jurisdiction, without bringing the appellant any closer to receiving a decision that adequately addresses the merits of whether the dose estimates relied on by VA are based on a methodology that complies with 38 C.F.R. § 3.311(c).

---

[160] In this regard, I incorporate by reference Judge Pietsch's and Judge Falvey's respective dissents to the Court's limited remand order and order certifying the class, which dissents I completely joined. *See Skaar v. Wilkie* (*Skaar I*), 31 Vet.App. 16, 22-32 (2019) (en banc order) (Pietsch, J., dissenting); *see also Skaar v. Wilkie* (*Skaar II*), 32 Vet.App. 156, 208-25 (2019) (en banc order) (Falvey, J., dissenting).

[161] In the absence of an NOD placing a skin cancer claim into appellate status and a Board decision addressing that claim, I agree with the majority's conclusion that the Court cannot address the merits of any of the appellant's substantive arguments related to skin cancer and § 3.309. *See ante* at 21.

## I. LEUKOPENIA CLAIM: VALIDITY OF DOSE ESTIMATES PURSUANT TO 38 C.F.R. § 3.311

It is well settled that the Board is required to consider all theories of entitlement to VA benefits that are either raised by the claimant or reasonably raised by the record. *Robinson v. Peake*, 21 Vet.App. 545, 553 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). For that reason, I fully concur in the majority's decision to set aside the Board's April 2017 decision; the Board, at that time, did not address the appellant's 38 C.F.R. § 3.311 arguments. *See* R. at 1-12, 106-07, 778-83. I, however, would draw that conclusion based solely on the content of the April 2017 Board decision, the evidence and arguments then before the Agency, and the contentions raised in the appellant's initial briefing to the Court.[162]

As for proceedings since that time, for the reasons stated more fully by Judge Pietsch in her dissent to the Court's limited remand order, *see Skaar I*, 31 Vet.App. at 30-32 (Pietsch, J., dissenting), I continue to believe that the Court exceeded the bounds of its jurisdiction by remanding the matter to the Board to address the scientific validity of the methods applied in arriving at a dose estimate and by permitting the appellant to submit additional evidence and argument, yet constraining the broad discretion ordinarily afforded to the Secretary in developing a claim. *See Douglas v. Shinseki*, 23 Vet.App. 19, 22-23 (2009) (discussing the statutory and regulatory provisions supporting the Secretary's broad authority to develop a claim); *Shoffner v. Principi*, 16 Vet.App. 208, 213 (2002) (stating that 38 C.F.R. § 3.304(c) provides the Secretary "the discretion to determine how much development is necessary for a determination of service connection to be made"); 38 C.F.R. § 3.304(c) (2020) ("The development of evidence in connection with claims for service connection will be accomplished *when deemed necessary*." (emphasis added)). And, regardless of the propriety of the scope of the limited remand, "[b]ecause the [Notice of Appeal] triggering our jurisdiction relates only to the April 2017 Board decision," our review remains constrained by statute to the 2017 Board decision and the materials then before the Board. *Skaar I*, 31 Vet.App. at 31 (Pietsch, J., dissenting); *see Skaar II*, 32 Vet.App. at 216-17 (Falvey, J., dissenting).

---

[162] For the reasons stated in my dissent to the panel's order denying the Secretary's motions to strike the attachments and related arguments to the appellant's briefs, my review would be limited to those arguments that do not rely on the documents attached to his briefs. *See Skaar III*, 2020 WL 3564269, at *3-8 (Meredith, J., dissenting).

Further, even assuming that the Court has jurisdiction to review the Board's supplemental statement of reasons or bases and the evidence added to the record following the Court's limited remand, the Board's supplemental analysis demonstrates that the Court's limited remand did not allow for meaningful review of the appellant's challenges to the methodologies employed by the Air Force and the dose estimates relied on by VA in adjudicating his claim. In this regard, it is noteworthy that the majority faults the Board for finding, "on its face," that the June 2014 dose estimate "is based on sound scientific evidence," Board Mar. 26, 2019, Supplemental Statement at 5, but agrees at the same time "with the Board's determination that whether the dose estimate evidence before it is sound may require scientific expertise beyond what the Board can provide independently." *Ante* at 16.

I do not disagree that scientific expertise may be required to adequately address the appellant's arguments and evidence, including the Labat-Anderson report and Dr. Frank von Hippel's December 2017 opinion regarding that report and the Air Force's radiation dose estimates. *Cf. Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991) (finding that the Board is prohibited from "provid[ing] [its] own medical judgment in the guise of a Board opinion"), *overruled on other grounds by Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998); 38 C.F.R. § 3.311(a)(3) (2020) (requiring VA to obtain an independent expert radiation dose estimate "[w]hen necessary to reconcile a material difference between an estimate of dose, from a credible source, submitted by or on behalf of a claimant, and dose data derived from official military records"). But, by retaining jurisdiction, the en banc Court, in its limited remand, prevented the Board from developing the evidence the panel now agrees may be necessary to adjudicate the scientific validity of the disputed dose estimates. *See Skaar I*, 31 Vet.App. at 19 (remanding the case "*solely* for the Board to provide a supplemental statement of reasons or bases" and ordering that, "regardless of the outcome of the Board's determination on remand, the Board **shall not take any further action** beyond the response required by this order unless and until the Court relinquishes jurisdiction over the matter" (bold emphasis added)). Indeed, the Board recognized these restrictions on its jurisdiction,[163] and

___

[163] The Board stated in relevant part:

[A]t no time ***prior to*** the Board's April 2017 decision did the appellant offer his own independent dose estimate. Such a report would have been considered by the Board, and the Board would have been required to determine its probative value in making a decision. Without an independent dose estimate, and without a rational basis to reject the competent findings of the Air Force which were

30

the effect of those restrictions were not lost on the parties. *See* Appellant's Response to the Court's Feb. 1, 2019, Order at 1-2 (asserting that the Board ignored 3390 pages of evidence submitted on limited remand); Secretary's Response to the Court's Feb. 1, 2019, Order at 7-9 (arguing that the Board lacks authority to render decisions requiring specialized expertise and that the Board was precluded from obtaining any additional evidence interpreting the highly technical Labat-Anderson report). Thus, I would not, under the unusual circumstances of this case, conclude that the Board "abdicate[d] its responsibility to assess whether the evidence before it is 'sound.'" *Ante* at 16.

The remand ordered today, including the Court's relinquishment of jurisdiction, affords the appellant the relief he should have received initially and the Board the opportunity to obtain and consider all the evidence deemed necessary to decide the claim. I would expect, after the protracted nature of these proceedings, that the Secretary will fulfill his statutory obligation to proceed expeditiously, fully consider the post-April 2017 evidence and argument added to the record, and develop evidence, as necessary, to fully and fairly adjudicate the appellant's § 3.311 claim.[164]

---

relied on by various VA personnel, the Board could not find that the lay opinions offered by the appellant prior to the April 2017 decision outweigh the opinions offered by experts in the field.

Board Mar. 26, 2019, Supplemental Statement at 5. And, regarding the arguments submitted following the Court's limited remand, the Board concluded as follows:

> [W]hile the appellant has since raised numerous challenges to the methodology used, in evaluating the evidence **the Board is limited to the evidence that is available to it at the time a decision is rendered**. While the appellant's October 2014 and September 2016 letters raised challenges to the dose estimate there was no evidence that the claimant has any expertise in the field of preparing dose estimates, or that he had access to the evidence considered by the United States Air Force when they offered their revised opinion in June 2014. **As such, in April 2017 the Board had no evidentiary basis to reject the opinion offered by the Air Force**.

*Id.* (bold emphasis added).

[164] As to whether § 3.311(c)(1)(i)'s requirement that VA rely on "sound scientific and medical evidence" applies equally to subsection (c)(2), the majority seems to provide conflicting statements regarding the scope of its opinion. On the one hand, the majority states that the requirement applies to both subsections and that "[t]o hold otherwise would mean that the standard for granting a claim based on exposure to ionizing radiation is different than the standard for denying a claim." *Ante* at 9. On the other hand, the majority states as follows: "We have no occasion in this appeal to consider whether, given the regulation's express language, the quality of evidence under subsection (1) differs from the quality of the evidence under subsection (2), and, therefore, we express no views on that question." *Ante* at 10. In either case, the majority's discussion in this regard appears to be dicta because the discussion is unnecessary to its decision, which sets aside the Board's decision based on an inadequate statement of reasons or bases.

## II. CLASS CLAIM: REMEDY

Next, although I agree that the April 14, 2017, Board decision denying disability compensation for leukopenia must be set aside and the appellant's individual claim remanded for readjudication, I cannot join the majority's conclusion that "[t]his portion of our decision applies to the class certified in this matter." *Ante* at 27. To begin, the majority provides no context for its declaration and, considering that this is the first time that the Court has certified a class in an individual appeal of a Board decision, some explanation is required. Further, although my position remains, as stated by Judge Falvey in his dissent to the class certification order, *see Skaar II*, 32 Vet.App. at 210-15, that the en banc majority exceeded our jurisdiction when it certified a class to include veterans who have not yet filed a claim and veterans who have filed claims that remain pending before VA at any level—the so-called "Future-Future claimants" and "Present-Future claimants"—we are now left to surmise how the Court's decision today will affect the certified class. For example, given that the class issue has not yet been resolved and the Court is not retaining jurisdiction, who will have jurisdiction over the class after mandate issues? Is it possible for the class to be "pending" before VA? Would the class travel with the appellant's claim to the Board and, if additional development is required, to the RO? And, what effect would that have on the status of any class members' pending claims, or the Agency's ability to process a new claim? Are the class members in limbo until the Agency adjudicates, on a fully developed record, the appellant's challenges to the dose estimates relied on by VA?

Under the circumstances, I would suggest that the Court instead, pursuant to its duty to monitor its class decision, sua sponte consider the continued propriety of maintaining the class action. *See Amara v. CIGNA Corp.*, 775 F.3d 510, 520 (2d Cir. 2014) (noting that Rule 23 of the Federal Rules of Civil Procedure "requires courts to 'reassess . . . class rulings as the case develops,' and to ensure continued compliance with Rule 23's requirements" (citation omitted)); *Kingery v. Quicken Loans, Inc.*, 2014 U.S. Dist. LEXIS 75811, at *2 (S.D. W. Va. June 4, 2014) ("Even after the court has certified a class, it 'is duty bound to monitor its class decision and, where certification proves improvident, to decertify, subclassify, alter, or otherwise amend its class certification.'" (quoting *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 544 (E.D. Va. 2000))). As stated by the en banc majority in its class certification order, "[t]he class seeks a single class-wide injunction ordering VA to comply with the provisions of § 3.311." *Skaar II*, 32 Vet.App. at 194. But that is not the decision that the Court reaches today. *Compare ante* at 13-18, 26-27, *with*

*Skaar II*, 32 Vet.App at 194 (stating that, "if the class succeeds on the merits, 'injunctive relief or corresponding declaratory relief'—in the form of an order from this Court to the Secretary that he comply with the provisions of § 3.311—'is appropriate respecting the class as a whole'" (quoting FED. R. CIV. P. 23 (b)(2))). Rather, the Board's inadequate statement of reasons or bases frustrates judicial review, precluding our ability to provide the requested class-wide relief and compelling us to remand the matter for full readjudication without retaining jurisdiction. And, we have no reason to assume that further adjudication of the appellant's claim will lead to a final Board decision adverse to the appellant or subsequent appellate review of the class issue for which he is the representative. How, then, would the substantive issue be resolved for the class members?

Further, in certifying the class, the en banc majority recognized that "class actions before this Court are the exception, not the rule," and laid out a nonexhaustive set of factors for consideration on a case-by-case basis. *Skaar II*, 32 Vet.App. at 196; *see id*. at 194-99. Although no one factor was identified as determinative, it is noteworthy that a factor found to weigh in favor of certification was the purported completeness of the record. *Id.* at 199. Specifically, the en banc majority emphasized that (1) the appellant and the class submitted scientific evidence challenging the validity of the Air Force's dose estimates, (2) the Court is "equipped with the Board's supplemental statement addressing [the appellant's] challenge to VA's adherence to § 3.311," and (3) the Court "require[s] no additional information to decide the class challenge on the merits." *Id.*

As set forth above, the panel now reaches an appropriate but opposite conclusion. We lack sufficient factfinding by the Board and, as alluded to by the majority and the Board, additional expert scientific evidence may be required to adequately address the appellant's arguments. *See ante* at 16 (agreeing that it may not be proper for the Board to make scientific determinations and suggesting that the Board seek appropriate expert evidence to render an informed decision); Mar. 26, 2019, Supplemental Statement at 5. *But see Skaar II*, 32 Vet.App. at 199 (recognizing that class certification "could prove impractical" if the Court required a significant amount of additional information).

In sum, although some of my colleagues previously considered the class action device a superior method for litigating the class claim, it has become even more apparent now that the statutory limits on our appellate jurisdiction, our lack of factfinding abilities, and an incomplete record render class treatment of this issue at best impractical and raise a spectrum of jurisdictional, procedural, and substantive complications. The Court should decertify the class.

### III. SKIN CANCER

As for the appellant's claim for skin cancer, the majority on de novo review concludes that he filed a timely NOD with the RO's March 2014 denial and remands the matter for issuance of a Statement of the Case. I disagree both with the substance of the decision as well as the majority's implicit acceptance of the appellant's failure to comply the Court's Rules of Practice and Procedure and willingness to address this late-raised argument.

In that regard, I would stress that the represented appellant did not raise this argument in his opening brief.[165] *But see* U.S. VET. APP. R. 28(a)(5). Rather, he first raised this issue of an unaddressed NOD in response to the Secretary's motion to strike his brief, in which the Secretary asserted in part that, because the Board adjudicated only a claim for leukopenia and the appellant failed to explain in his opening brief the basis for the Court's jurisdiction over a claim for skin cancer, the Court should not consider his arguments relating to skin cancer. *See* Secretary's Apr. 18, 2018, Motion To Strike at 1-2. Further, in his opposition, the appellant argued only that the Court has jurisdiction over the claim because May 16 and June 23, 2014, letters were sufficient to constitute an NOD, and the Board implicitly denied the claim. *See* Appellant's May 14, 2018, Opposition to Motion To Strike at 1-2. Not until he filed his reply brief, after the Secretary's limited opportunity to argue why the Court lacks jurisdiction over the skin cancer claim, did he point to several letters in the record—including the November 2014 letter, which the majority now deems a valid NOD. *Compare* Secretary's Br. at 13-14 (asserting that "[n]owhere in his [opening] brief does [a]ppellant identify any documents in the record" initiating an appeal as to skin cancer and, in support of his argument that the Court lacks jurisdiction, noting that, in November 2014 correspondence, the appellant informed VA that his "'intention and desire was to have [skin cancer] considered within the parameters of exposure to Agent Orange, *not radiation*'" (emphasis added) (quoting R. at 758)), *with* Reply Br. at 3-4 (referencing six letters from May 2014 through February 2015 as potential NODs). And, with regard to the November 2014 letter, the appellant's entire argument is as follows: "Mr. Skaar sent a letter on November 20, 2014[,] disagreeing with the denial of his skin cancer claim and asking that the VA reconsider it." Reply Br. at 4. He does not

---

[165] To be clear, the appellant raised arguments in his opening brief with regard to *the merits* of his skin cancer claim; he did not, however, explain how the Court would have jurisdiction to address the merits of a claim not adjudicated in the Board decision on appeal or request remand on procedural grounds. Appellant's Brief (Br.) at 9-16, 25-30 (in part requesting that the Court direct VA to grant disability benefits for skin cancer).

explicitly discuss the actual wording of that letter, clarify the context in which it was written, or otherwise explain why it meets the requirements of an NOD. *See id.*

Unlike other cases in which the Court has exercised its discretion to hear late-raised arguments, *see, e.g.*, *Crumlich v. Wilkie*, 31 Vet.App. 194, 202 (2019) (addressing a late-raised argument where "the Court was presented with a compelling allegation that the regulation VA ask[ed the Court] to apply conflict[ed] with the appellant's statutory rights and the Secretary's concessions appeared to confirm that allegation," and the Court thereafter obtained a written response from the Secretary), the circumstances of this case do not warrant similar treatment.[166] *See Wait v. Wilkie*, 33 Vet.App. 8, 19 (2020) (declining to address matters first raised during the rebuttal portion of oral argument); *see also Carbino v. Gober*, 10 Vet.App. 507, 511 (1997) (declining to review an argument first raised in the appellant's reply brief), *aff'd sub nom. Carbino v. West*, 168 F.3d 32, 34 (Fed. Cir. 1999) ("[I]mproper or late presentation of an issue or argument . . . ordinarily should not be considered.").

However, even assuming that consideration of this issue is warranted, I cannot agree that the appellant's November 2014 correspondence constitutes an NOD. *See ante* at 22-24. The majority holds that "[w]hen we view the November 2014 letter in the context of the record as a whole, . . . [the] appellant's November 2014 letter, considered with the new claim form and medical evidence attached to the letter, qualifies as a valid NOD." *Ante* at 23. The majority states that the letter "explicitly refers to the March and September 2014 rating decisions, . . . expresses disagreement with those decisions[, and] . . . . showed an intent to continue to pursue benefits for his skin cancer." *Ante* at 23-24. Yet, neither the appellant nor the majority identify which language in the letter "can be reasonably construed as disagreement with [the rating decisions] and a desire for appellate review." 38 C.F.R. § 20.201 (2014); *see ante* at 23-24; Reply Br. at 4.

Further, in my view, even liberally construing the letter, when read in context, it reflects that the appellant did *not* express a desire for appellate review. Rather, after noting that his claim for skin cancer "began a long journey through the VA process," the appellant provided the following clarification regarding his intent:

---

[166] In this regard, I would note that declining to address this issue is consistent with decades of caselaw from our Court and higher courts and would not leave the appellant without an available remedy. *See Evans v. Shinseki*, 25 Vet.App. 7, 18 (2011) (citing *DiCarlo v. Nicholson*, 20 Vet.App. 52, 55 (2006), *aff'd sub nom. Dicarlo v. Peake*, 280 F. App'x 988 (Fed. Cir. 2008)) (concluding that it was not apparent from the record whether the appellant filed an NOD concerning claims not decided by the Board, but that the appellant remained free to raise the issue to VA).

I received a phone call from a live person at the Muskogee [o]ffice informing me that my claim was being forwarded to the Jackson, M[ississippi] Regional Center as they process all radiation-related claims. *My intention and desire was to have that disease considered within the parameters of exposure to Agent Orange, **not radiation.***

The skin cancers were both denied on [March 27, 2014,] and again on September []4, 2014, as not having been caused as a result of documented exposure to RADIATION.

Therefore[,] I have reopened the claim for service[-]connected compensation *as a result of my exposure to Agent Orange*.

R. at 758 (italics and bold emphasis added).

The foregoing demonstrates that, to the extent that the appellant expressed disagreement with the rating decisions, his disagreement centered on the RO's adjudication of the wrong theory of entitlement. Instead of seeking appellate review of the RO's denial, the appellant unequivocally twice expressed his desire and intent to pursue benefits for skin cancer based on an alternative theory—exposure to Agent Orange. *See Jarvis v. West*, 12 Vet.App. 559, 561 (1999) ("In determining whether a written communication constitutes an NOD, the Court looks at both the actual wording of the communication and the context in which it was written.").

Finally, because the appellant's arguments regarding the remaining letters are undeveloped, *see* Reply Br. at 3-5, I would conclude that he has not shown that the Board possessed jurisdiction over his claim for skin cancer. And, where the Board lacks jurisdiction, so does this Court. *See Ledford v. West*, 136 F.3d 776, 779 (Fed. Cir. 1998) (holding that "the court's jurisdiction is premised on and defined by the Board's decision concerning the matter being appealed"); *see also Tyrues v. Shinseki*, 23 Vet.App. 166, 178 (2009) (en banc) ("[T]his Court's jurisdiction is controlled by whether the Board issued a 'final decision'—i.e., denied relief by either denying a claim or a specific theory in support of a claim and provided the claimant with notice of appellate rights."), *aff'd*, 631 F.3d 1380 (Fed. Cir. 2011), *vacated*, 565 U.S. 802 (2011), *reinstated as modified*, 26 Vet.App. 31 (2012) (en banc) (per curiam order), *aff'd*, 732 F.3d 1351 (Fed. Cir. 2013); *cf. Manlincon v. West*, 12 Vet.App. 238, 240-41 (1999) (exercising jurisdiction and concluding that, because the appellant had filed an NOD, the Board erred by referring a matter to the RO rather than remanding for issuance of an SOC).

## IV. CONCLUSION

For these reasons, I concur in the result with respect to the appellant's individual claim for leukopenia under § 3.311. I further agree with the majority's conclusions that the Court lacks jurisdiction to address the appellant's substantive arguments concerning skin cancer, the IRR, and § 3.309. I respectfully dissent from the remainder of the Court's opinion, including its application of the remedy to the class.